C. J. PENNEBAKER et al., Appellees, v. NORTH AMERICAN LIFE INSURANCE COMPANY, Appellant.

No. 44253.

MARCH 8, 1938.

OPINION ON REHEARING FEBRUARY 14, 1939.

Clyde McFarlin and Thomas E. Rooney, for appellant.

Wallace & Claypool and R. S. Milner, for appellees.

RICHARDS, J.—This appeal having been resubmitted, following the granting of plaintiffs' petition for rehearing, the original opinion filed March 8, 1938, published in 278 N. W. 198, is withdrawn, and therefor this opinion is substituted.

Plaintiffs are assignees of Elsie G. Boatman, the beneficiary of a policy of insurance upon the life of her husband, Martin E. Boatman. The policy was issued by defendant and bears date November 8, 1929. The insured died June 7, 1934. In their petition in equity plaintiffs sought to recover the amount of the policy, and to reform its terms in certain respects. Defendant answered, pleading as defenses the matters hereinafter noted. The case was tried upon the merits. Judgment was rendered against defendant for the amount of the policy less certain deductions. From the judgment defendant has appealed. There being no appeal by plaintiffs the court's refusal to grant the prayer for reformation is not for consideration.

The policy so permitting, the practice of the insured had been to pay the annual premiums in quarterly installments. The answer alleged that the wording of one clause of the policy was that, ''If any premium or portion thereof, be not paid when due, this policy shall be void and all premiums forfeited to the company, except as herein provided.'' An associated allegation was that the insured failed to pay a quarterly premium which was due on February 8, 1932, and failed to pay the same within the 30-day period of grace allowed for payment of premiums that had become due. The answer also alleged that more than 30 days after February 8, 1932, the insured mailed this February premium to defendant's agency in Des Moines, and was thereupon notified by the agency that the policy had lapsed for failure of payment of said premium due February 8, 1932.

To the question of fact, thus raised in the answer, as to the time of payment, the following conceded matters are pertinent; the policy granted a grace period of one month, not less than 30 days, for payment of premiums falling due, during

which period the insurance continued in force; under the usages and practices adopted by defendant, if the envelope in which a premium might be sent by mail to defendant's Des Moines agency was postmarked within the grace period at the postoffice where mailed, the payment was in due time; a letter mailed from Hartwick, the place of residence of insured, to Des Moines, would in the ordinary course of mail reach Des Moines in time for delivery upon the following day within the business district where defendant's agency was located.

Decedent's check, bearing date March 8, 1932, payable to defendant, and being for the amount of the February premium, was introduced in evidence. It had been endorsed and cashed by defendant. The beneficiary testified that, of her personal knowledge, the check was written by the insured, placed in an envelope with due postage thereon, properly addressed to defendant's Des Moines agency, and deposited in the United States mails by this witness, all on March 8, 1932. Contra, the lady who had the title of cashier in defendant's Des Moines branch agency testified that the letter enclosing this check did not reach the office of the Des Moines agency until March 11, 1932. A letter bearing date March 11, 1932, was mailed by this witness to the insured stating that the policy had lapsed. This cashier also testified that she preserved in the files the envelope that enclosed the check from Boatman, and that to the best of her knowledge the same remained in the files in the Des Moines agency when her employment with defendant terminated in September 1934. Invoking the provisions of Code section 11316, plaintiffs petitioned that defendant be required to produce the envelope, as well as a number of defendant's records and files including the daily reports of the cashier and defendant's loose-leaf record and invoices showing notations of the dates on which envelopes containing premium checks payable at the Des Moines office had been mailed and received. Defendant's return to the court's order granting this petition was to the effect that defendant was unable to produce any envelope in which a check was mailed by Martin E. Boatman, for the reason any envelope so received was not kept in the records of the company, and that the loose-leaf record including the invoice made at the Des Moines office was not in defendant's possession, that the Des Moines branch office was closed sometime after February 8, 1932, and the records in connection with said of-

fice were reported to defendant as having been destroyed. The envelope, showing a mailing date of which 8, or even March 9, 1932, would have established beyond much doubt the timely payment of the quarterly premium. Likewise a mailing postmark of March 10 or 11 would quite as effectively have sustained defendant's contention. But the letter was not produced, nor any records·made in the Des Moines office or kept in defendant's home office, showing notation of the mailing date of envelopes containing premium remittances. The making of notations of such dates on "invoices" appears to have been a practice of defendant's Des Moines agency. Such are the more salient aspects of the testimony. To set out the record fully, including evidence offered to directly impeach the testimony of the cashier, and to cast some doubt upon the sufficiency of defendant's evidence concerning its reasons for the nonproduction of the envelope and records pertaining to its mailing date, would entail unjustifiable length of discussion. The record leads us to the conclusion that was reached by the trial court, i. e., the remittance was mailed within the period of grace, and in such time that there was no warrant for claiming that there had been a lapsing of the policy.

In addition to what has been stated, the answer alleged that after the insured had been notified that the policy had lapsed, and after he had signed an application for reinstatement which was requested by defendant, the reinstatement was refused by defendant, following medical examination; that thereupon, on May 25, 1932, by its check of that date, defendant returned the premium that insured had tendered by his check dated March 8, 1932; that the insured endorsed and cashed the check of defendant dated May 25, 1932; that decedent made no ·further premium payments on the policy. The answer then alleges that "by accepting and cashing said check for returned premium, and failing to make any further payments, or tender of payment of the quarterly premiums due upon said policy thereafter, the said Martin E. Boatman waived any claims against the defendant herein upon said policy, and by reason of the matters and things set forth, the beneficiary named in said policy, to wit, Elsie G. Boatman, and her assignees, are now estopped from claiming any right under said policy of insurance against the defendant herein."

In the commonly adopted method of writing contracts

of insurance may perhaps be found an explanation of the frequency of pleas of waiver in insurance litigation. Ordinarily the phrasing of the policy is such that the insurer agrees to indemnify if loss occurs, and is the sole promisor. While there may be representations in the application, there is seldom found therein or in the policy any promise of the insured that he will do any act or perform any duty. Though unilateral in form, nevertheless there is a contemplation in the contract that the insured will do certain things, for instance, will pay premiums, and will so do within specified periods of time. Excepting as statutes prescribe forms, there would appear to be no reason why the contemplated things, to be done by the insured, could not be expressed bilaterally, as in mutual insurance association membership certificates. But such is not the practice in ordinary life insurance contracts. The contemplated acts of the insured are not in terms his agreements. What would be his agreements, if the contract were bilateral, are evidenced in the manner of conditions, whereby the nonperformance by the insured of these contemplated acts empowers the insurer to advantage itself, often to the extent of rescinding the contract and extinguishing the executory obligations the insurer has assumed. The policy in the case at bar conforms to this usual practice. There is found therein no express agreement that the insured will pay the premiums. But the policy does contain a clause that unless premiums are paid at the times stated the policy shall be void. The great weight of the authorities sustains the proposition that in such a clause the parties mean voidable, when they use the word void, this being the reasonable interpretation of their meaning, in view of the nature of the transaction. That is, the clause is for the exclusive benefit of the insurer. And it is for the insurer to say whether or not it deems it advantageous to its interests to avail itself of the benefits. Viele v. Germania Ins. Co., 26 Iowa 9, 96 Am. Dec. 83; McDonald v. Equitable Life Assur. Soc., 185 Iowa 1008, 169 N. W. 352. There is not an obligation on the part of the insurer to change the existing legal relations, but it is its privilege to do so. And if the insurer indicates through words or by conduct that it has chosen not to avail itself of its privilege to extinguish the contract, on account of a defaulted condition, there arises a fact situation in connection with which the term ''waiver'' is frequently used. But in the consideration in the authorities of the term ''waiver''

319

it often appears to be limited to no specific legal concept, cases being found in which estoppel, or new contract, or release, or election, was the determining principle of law applicable to the facts pleaded in terms of waiver. Confusion has naturally resulted with reference to its purport when in a given case "waiver" is pleaded.

█ In the case at bar a differing situation obtains. Instead of the insured it is the insurer who pleads waiver, claiming that there was a waiver by implication, as a matter of inference to be drawn from the conduct of the insured. The acts and non-acts constituting such conduct have been set out in our quotation from the answer. Passing the question whether any specific defense was indicated by reason of the generalization that there was a waiver, and turning to the facts that are pleaded, some possible intendments may be eliminated. That is, it is clear that in the answer and in the evidence offered, there is no showing of the well-known elements of estoppel, nor a showing of any transaction in the nature of a new contract between the parties, as is sometimes the situation when waiver is pleaded. But in the answer there is one affirmative matter alleged. It is this—what the insured allegedly waived was "Any claims against the defendant herein, upon said policy." In this allegation the categoric word "released" would have conveyed the only reasonable meaning that, in view of the context, can be ascribed to the word "waived", that was used. In other words, if any defense was pleaded, it was an alleged release of defendant, not from some condition, but from all defendant's obligations under the contract. But the record shows the alleged release was supported by no consideration. The returning to decedent of the money he had tendered, acceptance of which was refused by defendant on May 25, 1932, was nothing in the nature of a consideration. Accepting its return was not prejudicial to plaintiff's rights. Section 9449, Code 1935. Loughridge v. Iowa L. & E. Assn., 84 Iowa 141, 50 N. W. 568. In Viele v. Germania Ins. Co., 26 Iowa 9, loc. cit. 57, 96 Am. Dec. 83, it is said:

"We conclude, therefore, that, as the condition is not dependent upon nor supported by the consideration, it may be waived or dispensed with even by an agreement without consideration."

The theory for the pronouncement appears to have been that

a condition in an insurance policy is a mere incident thereto, and that the consideration is the premium received by the underwriters, and that the consideration itself is no element of the condition. It is to be noted, however, that in the discussion there is an expression in the same opinion to the effect that the waiver or dispensation of a condition is not in the nature of a contract which requires the support of a consideration, but rather is in the nature of an estoppel. If it be conceded, arguendo, that the holding in the Viele case is that, estoppel not appearing, nevertheless a waiver of a condition is available to the insured though not supported by a consideration, the reasoning for such a conclusion would have no application to a situation in which, as in the case at bar, the alleged waiver was of the very contract itself, the thing for which the insured had paid the premiums. The rule is one applied to contracts generally, that a purported release by one party of the other's obligations avails nothing, unless duly supported by a consideration. Rauen v. Prudential Ins. Co., 129 Iowa 725, 106 N. W. 198; Walston v. Calkins Co., 119 Iowa 150, 93 N. W. 49; Doerr v. Nat. Fire Ins. Co. 315 Mo. 266, 285 S. W. 961, 54 A. L. R. 1336.

The only issue discoverable in defendant's plea of waiver being an alleged release of all defendant's obligations under the contract, the foregoing determines the question involved adversely to defendant. There need not be discussed the point urged by plaintiffs, that the plea of waiver was a "mending of hold" after commencement of this suit, and after defendant had planted its refusal to pay solely on the alleged lapse of the policy for nonpayment of the February premium.

We have mentioned that the judgment was for the amount of the policy less certain deductions. Reference was to the unpaid premiums with accrued interest, in the aggregate amount of which the trial court properly reduced the sum called for in the policy. Finding no errors the judgment and decree of the trial court is affirmed.—Affirmed.

MITCHELL, C. J., and STIGER, HALE, OLIVER, HAMILTON, and BLISS, JJ., concur.