JOHN J. MURRAY *vs.* EDES MANUFACTURING COMPANY.

Plymouth. April 7, 1941. — June 25, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Contract*, Construction, Termination.

Construing together provisions of a contract respecting payment of advances and royalties to the plaintiff, in substance that, if the defendant should fail to make payments to the plaintiff as specified, the "contract shall become null and void," and that "if this agreement is declared null and void because of the breach of any of its provisions" the defendant "shall be under no further liability under this agreement except" as to "royalties due and owing at the time of the termination," the defendant could not take advantage of his own default in making a required payment as the basis of a contention that the contract thereby had been terminated.

CONTRACT. Writ in the Third District Court of Plymouth dated August 23, 1938.

The claim in the declaration was for $1,500 and interest.

The case was heard by *Sullivan*, J.

*A. W. Wunderly*, for the plaintiff.

*G. W. Arbuckle*, for the defendant, submitted a brief.

COX, J. The plaintiff appealed from the order of the Appellate Division for the Southern District dismissing the

report of the trial judge, who gave certain requests of the defendant for rulings of law, and found for it.

Facts not in dispute are that the parties entered into a written contract that was drawn by the plaintiff's attorney, by the terms of which, subject to provisions more fully set out hereinafter, the defendant was required to pay the plaintiff $1,500 on the first days of January and July in each year during the life of the contract. The plaintiff's action is to recover the payment that was not made on July 1, 1938. On June 17, 1938, the defendant notified the plaintiff in writing that, under the provisions of paragraph 11 of the contract, it "terminates said agreement effective thirty days from . . . receipt of this notice. Without altering or affecting the foregoing notice, : . . it is agreeable to us to terminate the contract on July 1, 1938, if you will indicate to us that this date is agreeable to you." At some time after July 1, 1938, the plaintiff went to the defendant's place of business and there "viewed the conduct of the defendant in drawing off and disposing of the solution previously used by the defendant in the manufacture of plates contemplated in the original contract."

The contract, dated October 24, 1936, recites that the plaintiff has perfected a process for providing a film of metal on the back of printing plates and has applied for letters patent, and that the defendant desires to obtain a license to manufacture plates using this process and to sell them. The contract licenses the defendant for this purpose, and calls for initial payments by the defendant to the plaintiff of $2,500. Provision is made whereby the defendant is to credit the plaintiff with royalties at a specified percentage of amounts received from sales from the day that plates manufactured under the process are offered for sale. The defendant agrees, "subject to other modifying provisions in this agreement," to continue to pay royalties, and the plaintiff agrees that the contract will remain in full force during the life of the letters patent or any subsequent patents. By paragraph 11, the defendant reserves the right to terminate the agreement on thirty days' notice in writing to the plaintiff. The provisions of the contract, as to the con-

struction of which the parties are at a difference, are as follows: "12. It is further agreed that the said Corporation [defendant] shall pay to the said Murray [plaintiff] as an advance against royalties, the sum of Fifteen Hundred ($1500.00) Dollars on the first day of January and on the first day of July in each calendar year; this advance payment to be on a cumulative basis, that is to say, the said Murray shall receive in any event, the sum of Three Thousand ($3000.00) Dollars per year as a minimum royalty, but in the event the amount advanced shall exceed the amount of royalties due in any year, then the royalties in excess of the advance payment in the following year or years, shall be charged against the excess of the advance payment in the previous year or years. 13. The said Edes Company [defendant] shall make an accounting to, and pay to the said Murray the royalty payments semi-annually on the fifteenth (15th) day of August in each year for the royalties accrued during the first six months of the calendar year, and on the fifteenth (15th) day of February in the following year for the royalties accrued during the last six months of the calendar year. 14. It is agreed that if the said Corporation shall fail to pay to the said Murray as royalties and advance payments as provided for under this agreement in paragraphs twelve and thirteen (12 and 13), semi-annually and in full at the end of each yearly period, then this contract shall become null and void and the right to manufacture shall automatically revert to the said Murray, his successors and assigns, without process of law, and the right and license granted under this agreement and letters patent and application therefor shall cease and determine. . . . 17. It is further understood and agreed that if the Corporation shall fail to manufacture and dispose of plates using said process as hereinbefore provided, or shall fail to pay to the said Murray, his successors and assigns, the royalties hereinbefore provided, this agreement shall become null and void, and all rights granted herein shall automatically revert to the said Murray, his successors and assigns, without process of law, and the license granted under this agreement and Letters Patent shall cease

and determine. It is further understood and agreed, that if this agreement is declared null and void because of the breach of any of its provisions, that the Corporation shall be under no further liability under this agreement except to account for and to pay to the said Murray the royalties due and owing at the time of the termination of this agreement."

It is apparent that the real question for decision involves the construction of the contract, and especially of the four paragraphs just quoted. The trial judge found that the notice of termination by the defendant was received by the plaintiff on June 18, 1938, and that, before the expiration of the thirty days' notice, the defendant failed to meet the payment of $1,500 due the plaintiff on July 1, 1938, and that all prior $1,500 payments had been made. He then stated as follows: "Thus I find the breach, by nonpayment of the July 1, 1938, payment constituted a termination of the contract according to paragraph 14 of said contract and operated as a termination, before the time arrived, when the written notice of [*sic*] the plaintiff by the defendant would have become effective to terminate the contract. I further find that according to paragraph 17 of said contract it was understood between the parties thereto that in the event of a breach of any of the provisions of the contract the defendant corporation should not be liable under the contract for anything except to account for and pay to the plaintiff the royalties due and owing at the time of the termination of the contract. There was no evidence before me of any accounting or that any money was due on royalties."

The judge ruled, as requested by the plaintiff, that the contract was in full force and effect on July 1, 1938, and, as requested by the defendant, that under the provisions of paragraph 14 of the agreement, the contract became null and void on July 1, 1938, when the defendant failed to pay the plaintiff, as an advance against royalties, $1,500 as provided in paragraph 12; that under the provisions of paragraph 17 of the agreement, the contract became null and void on July 1, 1938, when the defendant failed to pay the

plaintiff the said $1,500; and that under the provisions of said paragraph 17, the failure of the defendant to pay the plaintiff the said $1,500 terminated the contract and rendered it null and void.

It is not contended that the defendant could not terminate the contract by giving notice to the plaintiff in accordance with the eleventh paragraph. The defendant contends that, despite the fact that under said paragraph 11 the contract would not terminate until thirty days after notice was given, the contract could also be terminated by its failure to pay the plaintiff $1,500 on July 1, 1938. In other words, it contends that it could elect to terminate the contract under the provisions of paragraphs 14 and 17 by not making that payment. It is to be observed that by paragraph 11, the right of the defendant to terminate the contract is in no wise dependent upon the will of the plaintiff.

It is unnecessary to determine whether the failure of the defendant to pay one semiannual instalment of $1,500 "as an advance against royalties" or one semiannual payment of royalties that had accrued, as provided in paragraphs 12 and 13 of the contract, is a sufficient cause under paragraphs 14 and 17 to render the contract null and void. There was no evidence that any money was due on account of royalties as provided for in the thirteenth paragraph, and, if we assume that the failure of the defendant to make the payment as an advance against royalties on July 1, 1938, was a sufficient cause to render the contract null and void, we are of opinion that the defendant cannot take advantage of its own default and thereby contend that the contract became null and void.

The provision that it shall become null and void is based upon the condition "if the said Corporation [defendant] shall fail to pay." Where a provision such as is found in the contract under consideration is not inserted for the benefit of both contracting parties, it has been held generally that the privilege of terminating the contract was not intended for the benefit of the party who is in default, because ordinarily one is precluded from taking advantage of his own default. *Kelp Ore Remedies Corp.* v. *Brooten*, 129 Ore.

357, 370, 371. It is unnecessary to consider whether the application of this general rule amounts to an interpretation of the word "void" as meaning voidable, see *Allis* v. *Billings*, 6 Met. 415, 417; *Trask* v. *Wheeler*, 7 Allen, 109, 111; *Cuneo* v. *Bornstein*, 269 Mass. 232, 236, or whether it amounts to anything more than saying that the parties did not intend that, by failing to perform a condition, one who should perform it can free himself from liability. See Williston on Contracts (Rev. ed.) § 746; *New Zealand Shipping Co. Ltd.* v. *Société des Ateliers et Chantiers de France,* [1917] 2 K. B. 717, 723. It is true that no rule of law prevents parties from expressly agreeing as to liability, and no repugnancy or inconsistency exists between the provisions of the instrument, if such an agreement is made. *Malden Knitting Mills* v. *United States Rubber Co.* 301 Mass. 229, 233, and cases cited. But we are of opinion that an examination of the entire contract in the case at bar leads to the conclusion that the provisions of paragraph 14, and of paragraph 17 for that matter, were inserted for the benefit of the plaintiff. The defaults referred to in paragraph 14 are the failure of the defendant to pay royalties and advance payments, and while it is true that in paragraph 17 further reference is made to failure to pay, nevertheless, it seems apparent that the important consideration in mind, as related to that paragraph, was what would happen if the defendant failed to manufacture and dispose of plates under its license. The advance payments and payments for royalties provided for were for the plaintiff's benefit, and if the defendant failed to manufacture, there would be no royalties due him under the clause of the contract that provided that he was to receive a certain precentage of the amount received by the defendant from sales of sheets and plates manufactured.

It is true that paragraphs 14 and 17 contain no provision that the contract shall become null and void at the option of the plaintiff or at that of either party. It is also true that the contract was drawn by the plaintiff's attorney, and that it provides that, upon the contract becoming null and void, the right to manufacture shall automatically revert to

the plaintiff without process of law, and that the license granted shall cease and determine. The provision in paragraph 17, whereby the defendant shall be under no further liability except to account for and pay royalties to the plaintiff due and owing at the time of the termination of the contract, is upon condition "if this agreement is declared null and void because of the breach of any of its provisions." The use of the word "declared" cannot be disregarded. The contract is to be construed as a whole, *Clark* v. *State Street Trust Co.* 270 Mass. 140, 153, 155, unless the words of the contract itself declare it null and void, and we are of opinion that they do not. The use of the word "declared" lends additional weight to our conclusion that some one had to declare it null and void by word or act, and that it was not the intention of the parties that the defendant could so declare it on the basis of its own default. *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.* 135 Mass. 248, 249. See *Kneeland* v. *Emerton*, 280 Mass. 371; *Cummings* v. *Hotchkin Co.* 292 Mass. 78, 82.

The rule of construction that we have applied finds general support. *Trask* v. *Wheeler*, 7 Allen, 109, 111. *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.* 135 Mass. 248, 249. *Stewart* v. *Griffith*, 217 U. S. 323, 329. *Grigsby* v. *Russell*, 222 U. S. 149, 155. *Western Union Telegraph Co.* v. *Brown*, 253 U. S. 101, 110–112. *First National Bank of Wagener* v. *Glens Falls Ins. Co.* 27 Fed. (2d) 64, 67, 68. *Moffat Tunnel Improvement District* v. *Denver & Salt Lake Railway*, 45 Fed. (2d) 715, 730, 731. *Biscayne Shores, Inc.* v. *Cook*, 67 Fed. (2d) 144. *Burns Mortgage Co. Inc.* v. *Schwartz*, 72 Fed. (2d) 991. *American Surety Co.* v. *United States*, 112 Fed. (2d) 903, 906. *Jones* v. *Hert*, 192 Ala. 111, 113, 114. *Cotterill* v. *Hopkins*, 180 Ga. 179, 180. *Pennebaker* v. *North American Life Ins. Co.* 226 Iowa, 314, 318. *Alexander* v. *Wingett*, 63 Mont. 254, 259–261. *Vickers* v. *Electrozone Commercial Co.* 37 Vroom, 9, 13, 14. *Kelp Ore Remedies Corp.* v. *Brooten*, 129 Ore. 357, 370, 371. *Malins* v. *Freeman*, 4 Bing. N. C. 395. Compare *Schwab* v. *Baremore*, 95 Minn. 295, 297–299.

It is unnecessary to consider the requests for rulings in

detail, inasmuch as the judge was in error in ruling that the contract became null and void on July 1, 1938, upon the failure of the defendant to pay the plaintiff, as an advance against royalties, the sum of $1,500, and in refusing to rule as requested by the plaintiff, that upon failure to make the payment of $1,500 on July 1, 1938, there was a breach of the contract by the defendant, for which the plaintiff had a good cause of action. Inasmuch as the plaintiff would have been entitled to a finding in his favor if this last ruling had been given, the order of the Appellate Division dismissing the report is reversed, the finding for the defendant is vacated, and judgment is to be entered for the plaintiff on the declaration. *Keeney* v. *Ciborowski,* 304 Mass. 371, 374.

*So ordered.*