### CONNECTICUT INDEMNITY CO. v. LEE et al.

#### Civ. A. No. 6405.

District Court, D. Massachusetts.

Sept. 18, 1947.

Alexander B. Way, Jr., of Boston, Mass., for plaintiff.

Norman F. Fermoyle, of Boston, Mass., for defendant Mass. Bonding & Insurance Co.

Maurice P. Neiman, of Boston, Mass., for defendant Benjamin Bernhardt.

William Doyle, and Merrit J. Aldrich, both of Boston, Mass., for defendant Liberty Mut. Ins. Co.

Kenneth C. Parker and Sawyer, Hardy, Stone & Morrison, all of Boston, Mass., for defendants General Acc. Fire & Life Assur. Corp., Ltd. and Frank G. Shattuck Co.

Kenneth C. Parker, of Boston, Mass., for defendants Edwin A. Shuman, Robert S. Steinert and Warren Motley.

HEALEY, District Judge.

This is an action for a declaratory judgment brought pursuant to Section 274d of the Judicial Code, 28 U.S.C.A. § 400.

The plaintiff, The Connecticut Indemnity Company, is a corporation duly organized under the laws of the state of Connecticut. The defendants are either citizens of Massachusetts, or corporations duly organized under Massachusetts laws. The amount in controversy exceeds $3,000 exclusive of interest and costs.

By agreement of counsel at the hearing, this action was dismissed as to defendant Frank G. Shattuck Company, defendants Edwin A. Shuman, Robert S. Steinert and Warren Motley, trustees of the A. Shuman Real Estate Trust, defendant Liberty Mutual Insurance Company, and defendant General Accident, Fire & Life Assurance Corporation, Ltd.

### Findings of Fact

1. Prior to January 1, 1946, the plaintiff issued a Massachusetts Motor Vehicle Liability Policy in the name of Lee's Express to apply during the calendar year 1946, as the interest of said Lee's Express might appear, to certain specified motor vehicles.

2. Under Insuring Agreement 1, Coverage A of said policy, the plaintiff agreed "to pay on behalf of the Insured, in accordance with the 'Massachusetts Compulsory Automobile Liability Security Act' [G.L. (Ter.Ed.) c. 90, § 34A et seq.; c. 175, § 113A et seq.] * * * all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages to others for bodily injuries * * * sustained by any person or persons during the policy period * * * and caused by the ownership, operation, maintenance, control or use of the motor vehicle upon the ways of the Commonwealth of Massachusetts."

3. Under Insuring Agreement 1, Coverage B, the plaintiff agreed to pay on behalf of the Insured, in like terms, all sums the Insured shall become obligated to pay by reason of liability imposed upon him by law for personal injuries to persons specifically defined in Divisions 1, 2 and 3 thereof.

4. The pertinent parts of Item 5 of the Declaration of said policy are as follows:

"Item 5. The purposes for which the Motor vehicle is to be used are Commercial * * *

"(b) The term 'commercial' is defined as use principally in the business occupation of the named Insured. * * *

"(c) As respects Coverages B and C use of the motor vehicle for the purposes stated includes the loading and unloading thereof."

5. The defendant, Massachusetts Bonding Company, issued a so-called public liability policy, effective from April 15, 1945 to April 15, 1946, whereby Lee's Express was insured against liability arising out of the use of the premises occupied by it and out of all operations necessary or incidental thereto.

6. Insuring Agreement 1, Coverage A of said policy was as follows: "Bodily Injury Liability. To pay on behalf of the Insured, all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * because of bodily injury * * * sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined."

7. Division 1 of the "Definition of Hazards" in said policy states: "Premises-Operations. The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

8. "Exclusions" of said policy state:

"This policy does not apply:

"(a) under division 1 of the Definition of Hazards, to aircraft * * * or to * * * vehicles of any kind other than

handtrucks, * * * or the loading or unloading thereof, while away from the premises, unless specifically declared and described in this policy * * *."

9. The statement of facts agreed to by the parties is as follows:

"On or about March 28, 1946 the defendant George Nicholson, employed by the defendant Lee's Express as a truck driver, drove a Studebaker truck bearing Massachusetts registration for 1946 No. A-13357 and described by endorsement dated December 9, 1946 as a 1946 Studebaker truck, engine No. 3M6154, maker's No. 5243. The effective date of the endorsement February 18, 1946. On said date George Nicholson operated said truck to a point on Summer St., a public highway in the City of Boston, Commonwealth of Massachusetts, and stopped said vehicle in front of the building owned by the defendants Edwin A. Shuman, et al., trustees of the A. Shuman Real Estate Trust, and occupied in part by the defendant Frank A. Shattuck Company, known as Schrafft's for the purpose of this case. The said Nicholson stopped his truck for the purpose of making certain deliveries of merchandise to, said Schrafft's. The truck was stopped with its right side close to and parallel with the curbstone adjacent to 11 Summer St., Boston, which is the number of the store occupied by Schrafft's. The truck was headed in an easterly direction. It was the intention of said Nicholson to make delivery of certain merchandise by means of an elevator which opened on to the sidewalk in front of said premises; the doors over said elevator, when closed, form a part of the public sidewalk; they are constructed of metal and so situated that when closed one door covers the westerly portion of the elevator well and the other door covers the easterly portion of said elevator well; the easterly end of the door covering the westerly portion of the well meets the westerly end of the door covering the easterly end of the well so that the line of these two doors at their meeting point when closed runs crosswise on the public sidewalk in a northerly and southerly direction; when fully opened the westerly door is perpendicular to the sidewalk at the extreme westerly end of the elevator well and the easterly door is perpendicular to the sidewalk at the extreme easterly end of the elevator well.

"At a point near the elevator and on the outside wall of said premises is a bell button which when pressed notifies some person in the basement of Schrafft's store that the elevator is wanted; this person in turn throws a switch which releases a guard covering the southerly end of the elevator doors; this allows the person on the sidewalk to open the doors. When the doors are opened the elevator can be raised so that the platform of the elevator is even with the sidewalk. Defendant Nicholson got out of the truck and crossed the sidewalk adjacent to Schrafft's store, and pressed the bell button. Some person released the guards and Nicholson opened both doors fully. After opening the doors Nicholson crossed the sidewalk and went to the rear of said truck which he had stopped in the position previously described for the purpose of getting boxes of merchandise from the truck; when the defendant Nicholson reached the rear of said truck he reached into said truck and picked up a box of merchandise which was to be delivered to Schrafft's store and as he was in the act of picking up this box from the truck he heard a noise, looked up and saw that the westerly door of the elevator was going down and the defendant Bernhardt was falling head first into the elevator well."

10. The defendant Bernhardt, having sustained personal injuries as a result of his fall, has brought a suit now pending in the Superior Court for Suffolk County, Massachusetts, named and numbered as follows:

Docket No. 405823. Benjamin Bernhardt v. Frank G. Shattuck Company a corporation duly organized by law and having a usual place of business in Boston, Edwin A. Shuman, Robert S. Steinert and Warren Motley as they are trustees of the A. Shuman Real Estate Trust and John M. Lee and George Nicholson all of Boston within our County of Suffolk; returnable July 1, 1946; action of tort for negligence; with an ad damnum of $100,000.00 and writ dated May 14, 1946.

11. The defendants, Lee's Express and George Nicholson, have called upon the

plaintiff to defend them in the above-entitled action, on the ground that the policy covers both defendants in that action in connection with the accident to Bernhardt.

12. The plaintiff is in doubt as to whether the relationship of insurer and insured exists between itself and the defendants Lee's Express and Nicholson.

The complaint contains among others the following prayers:

(a) That the terms and conditions of the motor vehicle liability policy issued by the plaintiff to the defendant Lee's Express, be adjudicated and declared.

(b) That the Court adjudicate and declare that the relationship of insurer and insured does not exist between the plaintiff and the defendants Lee's Express and George Nicholson as to any liability of said defendants arising out of the accident referred to in the complaint.

(c) That the court declare that the plaintiff has neither the right nor the obligation to defend said action nor to indemnify the defendants against any liability or loss on account thereof.

Paragraph 26 of the answer of the defendant Massachusetts Bonding and Insurance Company is in effect a counterclaim containing the following prayers:

"1. That the terms and conditions of the policy of insurance issued by this defendant to the defendant Lee's Express, be adjudicated and declared.

"2. That the Court determine that the relationship of Insurer and Insured does not exist between this defendant and the defendants, Lee's Express and George Nicholson.

"3. That the relationship of Insurer and Insured exists between the plaintiff and the defendants, Lee's Express and George Nicholson, and that the plaintiff has the obligation of defending the action now pending in the Suffolk Superior Court, Boston, Massachusetts, and of indemnifying the defendants, Lee's Express and George Nicholson, against any liability or loss on account thereof."

The plaintiff filed an answer to the above counterclaim, containing the following prayers in addition to its prayers in its original complaint:

"1. That the terms and conditions of the policy of insurance issued by the defendant Massachusetts Bonding and Insurance Company to the defendant Lee's Express be adjudicated and declared.

"2. That the Court determine that the relationship of insurer and insured exists between the defendant Massachusetts Bonding and Insurance Company and the defendant Lee's Express.

"3. That the Court determine that the relationship of insurer and insured exists between the defendant Massachusetts Bonding and Insurance Company and the defendant George Nicholson.

"4. That the Court determine that the relationship of insurer and insured exists between the defendant Massachusetts Bonding and Insurance Company and the defendants Lee's Express and George Nicholson."

### Discussion

From the terms of the policies in question, it is evident that the relationship of insurer and insured will exist between the plaintiff or defendant insurance company on the one hand, and Lee's Express and George Nicholson on the other, according to whether or not the accident in question arose out of the "unloading" of the truck.

Since the plaintiff's policy covers accidents arising out of the unloading of the truck, a proper construction of the term "unloading", as used in that policy, will be the key to the solution of the whole case. If the accident in question is covered by the "unloading" clause in plaintiff's policy, then obligations undertaken by the plaintiff under the terms of the policy accrue. Otherwise, the obligations undertaken by the defendant insurance company must be satisfied by that company.

■ Thus, the fundamental question to be determined is whether the claim of the defendant Bernhardt, set forth in his cause of action in the state court, as applied to Lee and Nicholson, is encompassed by the terms of the policy issued by the plaintiff. Since this is a question of substantive law, it must be determined according to the laws of Massachusetts, where the contract of insurance was presumably made and where the plaintiff is called upon for performance.

Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. In other words, this court, in interpreting the meaning of the "loading and unloading" clause of the policy, is bound by interpretations of such a clause by the Massachusetts Court.

■ The briefs submitted by the parties cite no case in which a "loading and unloading" clause has been interpreted by the Massachusetts courts, and my examination of the Massachusetts cases reveals no instance of any Massachusetts decisions directly touching upon such a clause. It is, therefore, incumbent upon this court to interpret that clause according to the general principles of common law recognized in Massachusetts, with a view to reaching a decision which reason and justice dictates. New England Mutual Life Insurance Company v. Mitchell, 4 Cir., 118 F.2d 414, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505; Jackman et al. v. Equitable Life Assurance Society of United States, 3 Cir., 145 F.2d 945.

■ If the policy issued by the plaintiff did not contain the "loading and unloading" clause, Bernhardt's claim would not be covered by the policy under the Massachusetts decisions, since the necessary causal connection between the operation or use of the motor vehicle and the injuries for which damages are sought by Bernhardt did not exist. An examination of the cases of Caron v. American Motorists' Insurance Company, 277 Mass. 156, 178 N.E. 286; Kennedy v. Consolidated Motor Lines, Inc., 312 Mass. 84, 43 N.E.2d 121; Diggins v. Theroux, 314 Mass. 735, 51 N.E.2d 425; Perry v. Chipouras, 319 Mass. 473, 66 N.E. 2d 361, and General Accident, Fire & Life Assurance Corporation v. Hanley Oil Company, 321 Mass. 72, 72 N.E.2d 1, leads to the conclusion that under Massachusetts law, the cause of injury to a plaintiff must be something physically attached to or immediately connected in some manner with the motor vehicle or its operation in order for the court to find the necessary causal relationship to the operation or use of the motor vehicle so as to have the injury covered by the terms of a standard motor vehicle liability policy. While the court in those cases stated that each case must be decided on its own facts, the basis of each decision was the presence or absence of a proximate causal connection between the injury and the operation or use of the motor vehicle in question.

■ In like manner, the same test should be applied in the interpretation of a "loading and unloading" clause and its application to a specific accident. Unless there can be found to have been some proximate causal connection between the loading or unloading of the motor vehicle and the accident, such accident is not covered by the "loading and unloading" clause of the policy. Maryland Casualty Company v. United Corporation, D.C., 35 F.Supp. 570.

The difficulty arises in determining just what is encompassed by the terms "loading" and "unloading", as used in the policy. In determining the meaning of the words, the court must rely upon the rules used in interpreting contracts, particularly insurance contracts.

■ The cardinal principle in the construction of a contract is that the intention of the parties must govern. Bray v. Hickman, 263 Mass. 409, 161 N.E. 612.

■ And, in case of any ambiguity in the terms of an insurance contract, the ambiguous terms will be more strictly interpreted against the insurer. Mutual Life Insurance Company of New York v. Hurni Packing Company, 263 U.S. 167, 174, 44 S. Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102.

■ The meaning of the terms to be construed will be determined in the light of the contract as a whole, taking them in their plain and ordinary sense. Murray v. Edes Mfg. Co., 309 Mass. 395, 35 N.E.2d 203; Clark v. State Street Trust Company, 270 Mass. 140, 169 N.E. 897.

Under the policy in the instant case, the plaintiff became obligated to pay on behalf of the insured all sums which the insured should become obligated to pay by reason of the liability imposed upon him by law for damages caused by accident and arising out of the ownership, maintenance, operation or use of the truck, including the loading and unloading thereof, in the express business.

■ It is common knowledge that the express business consists of the pick-up and delivery of parcels of various shapes, sizes and weights at various business establishments. It is also clear that the term "unloading" of the vehicle would comprise the taking off the truck of parcels to be delivered to consignees. In Diggins v. Theroux, supra, the plaintiff was injured while aiding others in placing a showcase on a truck. At the time of the accident, the showcase had not been placed on the truck, nor had it even come in contact with the truck. Yet, the Massachusetts court held that, under the circumstances, the accident arose out of "the operation of a motor vehicle." [314 Mass. 735, 51 N.E.2d 426]

In the light of that decision, it would seem that an accident occurring while a parcel was actually being taken off a truck and before the parcel had come to rest immediately off the truck would be encompassed by the terms "operation or use of a motor vehicle".

■ Since the parties to a contract are presumed to have known the law and to have contracted in accordance therewith, Lorando v. Gethro, 228 Mass. 181, 187, 117 N.E. 185, 1 A.L.R. 1374, it is reasonable to assume that the addition of the "loading and unloading" clause in the policy in question was for the purpose of extending the coverage of the policy to accidents not covered by the other provisions of a standard motor vehicle liability policy. In other words, the term "unloading" as used in such a policy means something more than the actual physical operation of taking something off a truck. To decide otherwise would be to render the "loading and unloading" clause meaningless;—a construction to be avoided whenever possible. Clark v. State Street Trust Company, supra.

■ In my opinion, the term "unloading" refers to the whole process of unloading the truck until the goods have been deposited off the truck in a place of at least semi-permanence, as required by the contract of carriage or the custom of the carrier.

■ Since the facts of each case will determine whether or not a specific accident arose out of the "unloading" of a truck, and no general rule can be laid down, a variety of decisions has resulted in other jurisdictions in which the courts have construed similar policy provisions. In 160 A.L.R. 1259 et seq., at page 1264, the author of an excellent annotation to the case of Pacific Automobile Insurance Company v. Commercial Casualty Insurance Company of New York, 108 Utah 500, 161 P.2d 423, in which he reviews cases in other jurisdictions dealing with "loading and unloading" clauses, states: "The courts are not agreed as to the scope of the terms 'loading' and 'unloading', and the cases are in conflict. While not supported by statements of the courts in all instances, it is submitted that the courts in deciding when 'unloading' ends and delivery begins, or when the action preparatory to 'loading' ends and 'loading' begins, are guided by either one of two basic theories—the 'coming to rest' doctrine and the 'complete operation' doctrine * * *."

Under the "coming to rest" doctrine, unloading consists of only the actual removal of the article from the truck up to the time when the article taken off the truck has actually come to rest and every connection of the truck with the unloading process has ended.

The "complete operation" doctrine is that an "unloading" clause covers the entire process involved in the movement of goods when they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made.

Under the latter doctrine, the courts have held in practically all the cases that the "loading and unloading" clause covered the accident involved. Under the former doctrine, there has been a variety of holdings, dependent somewhat upon the different facts of the cases, but also seeming to reveal a divergence of views by the courts on the construction and interpretation of the clause.

While the cases cited in the annotation are helpful as an analysis of the various decisions, none of them, nor any other decided case that has come to my attention, is decisive of the instant case, since here the accident happened before anything was taken off the truck, but after the driver had done some act preparatory to unloading.

360

The defendant, Nicholson, was in the act of unloading a parcel from the truck, and, according to his intention as set forth in the agreed statement of facts, he was going to deliver it to the consignee by means of the sidewalk elevator. It is clear that during the process of unloading the truck, he intended to place the parcel directly on the sidewalk elevator as a means of delivery. There was, therefore, a causal relationship between the lifting of the elevator doors and the unloading of the truck.

Thus, whether we apply the "complete operation" doctrine or the "coming to rest" doctrine, I conclude that the accident falls within the coverage of the "loading and unloading" clause of plaintiff's policy, since the opening of the sidewalk elevator doors by the defendant Nicholson was, under the circumstances, an act preparatory to and an integral part of the process of unloading the truck.

### Conclusions of Law

I find and declare that as to any liability of the defendants Lee's Express and George Nicholson that may arise out of the accident referred to in the complaint:

1. The relationship of insurer and insured exists between the plaintiff and the defendants Lee's Express and George Nicholson.

2. The relationship of insurer and insured does not exist between the defendant Massachusetts Bonding and Insurance Company and the defendants Lee's Express and George Nicholson.