HONEY DEW ASSOCIATES, INC. vs. CREIGHTON MUSCATO
ENTERPRISES, INC., & another.[1]

No. 07-P-1099.

Norfolk. September 10, 2008. - March 23, 2009.

Present: McHugh, Mills, & Wolohojian, JJ.

*Contract,* Condition precedent, Franchise agreement, Construction of contract,
Parties. *Consumer Protection Act,* Franchise agreement. *Evidence,* Relevancy
and materiality. *Practice, Civil,* Argument by counsel, Amendment, At-
torney's fees.

At the trial of a complaint alleging that the defendant franchisees had commit-
ted a breach of a contractual obligation to make contributions to an advertis-
ing fund administered by the franchisor, the judge properly denied the
defendants' motion for a directed verdict, brought on the ground that a
formal vote of franchisees was a condition precedent to enforcement of the
advertising provision, where the plain meaning of the contract imposed no
such requirement. [849-850]

A provision contained in a franchise agreement signed by an individual in his
capacity as president of one franchisee did not also bind a second franchisee,
of which the individual was also president, and the terms of a later agree-
ment entered into by the two franchisees, among others, did not operate to
make the provision in the franchise agreement applicable to the second
franchisee; therefore, the franchisor could not maintain a claim against the
second franchisee for breach of the franchise agreement's provision.
[850-852]

This court remanded for retrial a G. L. c. 93A counterclaim arising in a
contract action, where a potentially dispositive issue, which counsel had
been induced to regard as conclusively established, was transformed into a
hotly contested, triable question during instruction of the jury and without
any opportunity for counsel to make a statement or offer additional evidence
on the point. [852-855]

This court remanded a party's award of attorney's fees to the trial court for
recalculation based on the claims, counterclaims, or portions thereof, if
any, upon which that party prevailed after retrial. [855-856]

CIVIL ACTION commenced in the Superior Court Department on
March 25, 1999.

[1] Muscato Development Corporation.

The case was tried before *Charles J. Hely*, J.

*William E. Gens* for the defendants.

*Jack J. Mikels* (*Elizabeth A. Doubleday* with him) for the plaintiff.

MILLS, J. The plaintiff, Honey Dew Associates, Inc. (HDA), is a franchisor of Honey Dew donut shops. The defendants are two franchisees of HDA: Creighton Muscato Enterprises, Inc. (CME), a Massachusetts corporation, has operated six Honey Dew shops under license from HDA; and Muscato Development Corporation (MDC), also a Massachusetts corporation, has operated two Honey Dew shops under license from HDA. Each of the eight shops was governed by its own individual franchise agreement. Thus, CME executed six franchise agreements with HDA, and MDC executed two.

HDA brought an action for breach of contract against CME and MDC, alleging that each had failed to make required contributions, on behalf of their respective shops, to a centralized advertising fund administered by HDA. CME and MDC counterclaimed, alleging, inter alia, that HDA had failed to make disclosures required by G. L. c. 93A, § 2(*a*). The relief requested by the defendants included rescission of the contractual provision allegedly requiring CME and MDC to contribute to the advertising fund.[2] Following a jury trial on the liability of CME and MDC, and a jury-waived determination of damages, judgment entered for HDA in the amount of $487,545, including $115,000 in costs, expenses, and attorney's fees awarded pursuant to contract.[3] Judgment also entered for HDA on each counterclaim.

CME and MDC appeal, asserting error in the denial of their motions for a directed verdict and abuse of discretion in the award of attorney's fees to HDA. They further argue that the improper admission of certain evidence materially prejudiced their G. L. c. 93A counterclaim. We vacate the judgments and remand the matter for further proceedings.

*Factual background.* At issue is whether a particular contract

---

[2]General Laws c. 93A, § 11, entitles a successful claimant under G. L. c. 93A, § 2, to "damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."

[3]For reasons to be discussed, CME and MDC were held jointly and severally liable for all breaches.

provision (advertising provision) is enforceable and, if so, to whom it applies. The advertising provision appears only in the franchise agreement for MDC's North Plymouth shop (North Plymouth agreement) executed by HDA and MDC effective August 22, 1996.[4] The provision reads, in relevant part:

> "You [i.e., MDC] agree to participate in and contribute to all advertising, marketing and promotional programs and other programs of ours [i.e., HDA] which, from time to time, are supported by a majority of full producing Honey Dew Donut Shops . . . . In the event that you or any Control Person owns an existing Honey Dew franchise (an 'other Franchisee'), it is expressly agreed that this provision shall be applicable to such other franchises. The other Franchisee(s), if a different person or entity than you shall acknowledge this provision by evidencing their assent, below."

On March 28, 1998, HDA announced that a majority of full producing shops in the Honey Dew chain supported a new advertising program. The new program required each shop, beginning April 1, 1998, to contribute two percent of its weekly gross sales to a pooled advertising fund, which amount would be matched by HDA.[5] MDC and CME each refused to make contributions to the fund on behalf of their respective shops, and HDA brought suit.

CME and MDC defended on the ground that the advertising provision was unenforceable for failure of a condition precedent. In particular, they maintained that the advertising provision could not be enforced until a majority of Honey Dew shops "voted" to accept HDA's advertising program. CME further argued that it

---

[4]An identical provision was present in the franchise agreement between CME and HDA for CME's Brockton location. CME subsequently sold its Brockton franchise to HDA, however, and the parties agreed in their purchase and sale contract that the Brockton franchise agreement "shall be deemed void as of October 27, 1997." On March 1, 2001, HDA amended its complaint to abandon the Brockton franchise agreement as a source of support for its present claims.

[5]The advertising provision specifies terms that are equivalent in substance but different in form: each shop contributes four percent of weekly gross sales to the advertising fund. HDA makes no direct contribution to the advertising fund, but reduces each shop's royalties from seven percent of weekly gross sales to only five percent.

had never signed the North Plymouth agreement, and thus had never agreed to be bound by the advertising provision. Each of these arguments was the basis of a motion for a directed verdict, the denial of which is challenged on appeal.

CME and MDC also argued at trial that an admission in HDA's pleadings had to be given conclusive effect and that, in any event, the manner in which HDA introduced evidence to rebut its earlier admission was itself improper. On appeal, CME and MDC contend that the judge committed prejudicial error by (1) refusing to instruct the jury that facts conceded in HDA's pleadings are to be given conclusive effect; (2) refusing to instruct the jury to disregard a portion of HDA's closing argument that pointed jurors' attention to information not in evidence; and (3) repeating and expressly sanctioning consideration of the aforementioned information. We address each of these contentions in turn.

*Contract claim: voting as a condition precedent.* CME's and MDC's motion for a directed verdict, arguing that a formal vote of shops was a condition precedent to enforcement of the advertising provision, was properly denied. HDA is correct in its contention that majority *support* of the advertising program by shops (as distinguished from a formal majority *vote*) is the only condition precedent to enforcement. The relevant portion of the advertising provision reads: "[MDC] agree[s] to participate in and contribute to all advertising, marketing and promotional programs and other programs of [HDA] which, from time to time, are supported by a majority of full producing Honey Dew Donut Shops . . . ." The plain meaning of this language imposes no requirement that the requisite majority support be established by a formal vote rather than, for instance, separate consultations with each owner. See *Ober* v. *National Cas. Co.*, 318 Mass. 27, 30 (1945) ("In the construction of contracts in writing words that are plain and free from ambiguity must be construed in their usual and ordinary sense"). The advertising provision says nothing whatsoever about voting, except that "[MDC] agree[s] to vote in favor of any advertising plan [HDA] propose[s] for a vote which would (1) require franchisees to pay 4% of gross sales to a common advertising fund . . . and (2) would lower royalties from 7% to 5%." Courts must interpret contract language "fairly

and reasonably . . . to ascertain the intention of the parties and to effectuate their purpose." *Whittle* v. *Pagani Bros. Constr. Co.,* 383 Mass. 796, 798 (1981). Particularly given its placement in a separate paragraph of the advertising provision, the sentence merely mentioning "a vote" could not reasonably have been intended to restrict the manner in which majority support might be established. Under any plausible reading, the purpose of the sentence is to secure an independent promise from MDC that all MDC-owned franchises would support the specified proposal. Nor are we persuaded that an insufficient number of shops assented to the program.[6]

*Contract claim: applicability of the advertising provision to CME franchises.* The North Plymouth agreement, containing the advertising provision, was signed by Richard Bowen, in his capacity as president of HDA, and by Creighton Muscato, in his capacity as president of MDC. MDC was plainly obligated, by its assent to the North Plymouth agreement, to contribute to the advertising fund on behalf of all MDC-owned franchises. That obligation arose from the following language in the advertising provision:

> "In the event that you [i.e., MDC] or any Control Person owns an existing Honey Dew franchise (an 'other Franchisee'), it is expressly agreed that this provision shall be applicable to such other franchises. The other Franchisee(s), if a different person or entity than you shall acknowledge this provision by evidencing their assent, below."

The more complicated question is whether this language also bound CME to contribute to the advertising fund on behalf of CME-owned franchises. We turn, now, to that matter.

Even if one assumes that CME was a "Control Person" within the meaning of the North Plymouth agreement, the advertising provision still requires "other Franchisee(s), if a different person or entity[,] . . . [to] acknowledge this provision by evidencing their assent, below." The signatories to the North Plymouth

---

[6]HDA, in the advertising provision, "reserve[s] the right, in [its] sole and absolute discretion, to designate or change the composition of shops included in the base for purposes of determining a majority . . . ."

agreement — HDA and MDC, by their respective presidents — were the only entities that in any way evidenced assent to the advertising provision. CME quite simply was not a party to the advertising provision in the North Plymouth agreement. Muscato signed the North Plymouth agreement strictly and unambiguously in his capacity as president of MDC. The text above the signature line reads "Muscato Development Corp. by its President, hereto duly authorized," and the text below the line reads "Creighton Muscato, President." Muscato's signature, moreover, is followed by the word "President" in handwriting.[7] Because only MDC agreed to be bound by the advertising provision, MDC is the only entity with the capacity to commit a breach of that provision. See *Situation Mgt. Sys.* v. *Malouf, Inc.*, 430 Mass. 875, 878 (2000). CME and MDC may have shared a common president, but each remained a separate Massachusetts corporation with an entirely distinct legal identity.[8] MDC never had the power unilaterally to bind CME in contract, and vice versa. See *Central Bridge Corp.* v. *Bailey*, 62 Mass. 319, 322 (1851).

HDA next argues that the advertising provision is made applicable to CME franchises by operation of the "Liability and Cross-Default Agreement" (LCD) executed by CME, MDC, and others.[9] For this proposition, HDA relies on the following language in the LCD: "With respect to contractual obligations, it is the intention of [CME and MDC] that each contract executed by [either CME or MDC] and running to HDA be construed as if executed by [both CME and MDC] . . . ." HDA's argument is unavailing. The contract must be construed as a whole. *Murray* v. *Edes Mfg. Co.*, 309 Mass. 395, 401 (1941). The manifest

[7]By contrast, Creighton Muscato signed HDA's liability and cross-default agreement, discussed *infra*, six separate times: as president of CME; as president of MDC; as president of Norwood Mustangs, Inc.; as president of Foxboro Warriors, Inc.; as trustee of the Creighton Investment Trust; and in his personal capacity.

[8]We note that Muscato was careful to maintain the separate legal identities of CME and MDC. The question would be closer had Muscato simply signed his name to the North Plymouth agreement, with no express indication of the capacity in which he had signed. See *Theos & Sons, Inc.* v. *Mack Trucks, Inc.*, 431 Mass. 736, 745 (2000). But see *Kelly* v. *Citizens Fin. Co. of Lowell*, 306 Mass. 531, 532-533 (1940).

[9]See note 7, *supra*. For present purposes, we may regard the agreement as having been among CME, MDC, and HDA only.

purpose of the LCD was to make CME and MDC accountable for each other's defaults, not to alter the substance of what acts or omissions *by a particular entity* were to constitute a default.[10] See *Whittle* v. *Pagani Bros. Constr. Co.*, 383 Mass. at 798. As the trial court correctly noted, the LCD "did not merge all the terms of every Muscato franchise agreement into every other Muscato franchise agreement." In context, the portion of the LCD quoted above simply elaborates upon the meaning of a phrase ("all obligations") in a preceding clause.[11] The sweeping interpretation urged by HDA cannot be adopted without exalting a rather forced literalism above the clear intentions of the parties at the time of the contract. *Ibid.*

The judgment entered in the case-in-chief must be vacated, and the contract claims against CME-owned franchises must be dismissed. At a minimum, the amounts due under the contract on behalf of MDC-owned franchises will have to be recalculated, along with interest, costs, and fees. However, the amounts due, if any, will depend on the outcome of the defendants' G. L. c. 93A counterclaim, discussed *infra*.[12]

*General Laws c. 93A counterclaim.* The counterclaim in question alleged that HDA, in connection with the North Plymouth agreement, failed to provide MDC with disclosures required by 16 C.F.R. §§ 436 et seq. (2008).[13] In its first[14] reply to CME's and MDC's first amended counterclaims, HDA admitted that it

---

[10]Indeed, at the time the LCD was executed, the Brockton franchise agreement between CME and HDA (see note 4, *supra*) had not yet been voided. We note again that the Brockton franchise agreement contained a provision identical to the advertising provision in the MDC-HDA North Plymouth agreement.

[11]"[CME and MDC] agree to be jointly and severally liable to HDA for all obligations of [either CME or MDC] to HDA pursuant to any Franchise Agreement . . . ."

[12]If judgment eventually enters in favor of HDA, then pursuant to the LDC, CME and MDC will be jointly and severally liable to HDA for any breaches by MDC-owned franchises.

[13]An allegation of noncompliance with Federal Trade Commission regulations, including 16 C.F.R. § 436, can state a claim under G. L. c. 93A. Section 2(*a*) of G. L. c. 93A declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful, and G. L. c. 93A, § 2(*c*), authorizes the Massachusetts Attorney General to "make rules and regulations interpreting the provisions of [§ 2(*a*)]." The regulations issued by the Attorney General declare that acts or practices are in

had provided "no additional offering circulars or disclosure information" but denied that any such disclosures were required under the circumstances. Whether that reply was amended in later pleadings is of paramount importance, because G. L. c. 231, § 87, provides that pleadings in any civil action "shall not be evidence on the trial, but the allegations therein shall bind the party making them." CME and MDC assert that the judge erred by not giving conclusive effect to HDA's reply. See *Meunier's Case,* 319 Mass. 421, 424 (1946). In addition, they point to several serious problems surrounding the introduction of evidence by HDA as to whether it had made all required disclosures. We describe, briefly, the irregularities that arose.

While HDA's president was on the stand, counsel for CME and MDC read in evidence that portion of HDA's reply that admitted its failure to disclose. HDA's president then confirmed, in his testimony, that HDA's reply had included the admission. Following this exchange, counsel for HDA requested a sidebar and indicated that he wished to supplement the material just read into evidence.[15] The judge responded that counsel could do so on redirect.

Significantly, counsel for HDA failed on redirect to address what, if anything, his client's pleadings had admitted regarding disclosure. He instead resurrected the issue very prominently during closing argument. Referring to CME's and MDC's allegation that HDA had not provided offering circulars[16] in connection with MDC's North Plymouth franchise, he said, "I believe [counsel for CME and MDC] told you that [the allega-

violation of § 2(*a*) if they, inter alia, "[v]iolate the Federal Trade Commission Act . . . ." See 940 Code Mass. Regs. § 3.16 (1993). That Act, in turn, outlaws unfair or deceptive practices affecting commerce and authorizes the Federal Trade Commission to make "rules which define with specificity acts or practices which are unfair or deceptive . . . ." 15 U.S.C. §§ 45(a)(1), 57a(a)(1)(B) (2006).

[14]At trial, counsel for HDA represented that its reply to CME and MDC's first amended counterclaims had been amended on January 7, 2001. As we shall discuss, the record fails to establish that this purported amendment had occurred.

[15]Presumably, he wished to introduce evidence of or evidence suggesting an amended reply to CME's and MDC's first amended counterclaims. See note 14, *supra.*

[16]Offering circulars are documents, drafted by franchisors, that contain disclosures required by 16 C.F.R. §§ 436 et seq.

tion] was admitted but in fact [it] was denied." He then stated that HDA did not know whether it had provided an offering circular, but that it was relying upon MDC's recitation, in the North Plymouth franchise agreement, that it had timely received a circular.

After counsel for HDA was finished, opposing counsel objected. He argued that counsel for HDA had not only strayed beyond the evidence during closing argument, but had done so in an attempt to refute a binding admission and in a manner that made him appear dishonest. Counsel requested that the admission in HDA's initial reply be read to the jury, accompanied by an instruction that any contrary information presented in HDA's closing argument was to be disregarded.

In response, counsel for HDA presented a copy of HDA's purported amended reply, dated January 7, 2001, in which a denial was substituted for the earlier admission. Notably, counsel for CME and MDC did not directly dispute, at trial, the assertion that HDA had amended its reply.[17] He emphasizes on appeal, however, that "[the] alleged pleading, dated January 7, 2001, does not appear in either the docket entries or clerk's record assembly of the case." While counsel's assertion is correct, we note that HDA's initial reply is likewise missing from the docket, though it is present in the record appendix.

The judge, acting on the belief that HDA had amended its reply, refused to grant the curative measures requested by CME and MDC.[18] His understanding was that "two mistakes" had occurred: counsel for CME and MDC had read a superseded pleading in evidence, and counsel for HDA had failed to notice and correct that occurrence. The judge sought to resolve the matter by explaining to the jury that each attorney had made a "good faith" mistake. He then read aloud the portion of HDA's purported amended reply that denied failing to make disclosures.

Regardless of whether HDA had properly amended its reply, the judgment entered on the counterclaim must be vacated, and a retrial of the counterclaim alleging HDA's failure to disclose

---

[17]In fact, when the judge referred to there being "a later amendment to . . . [HDA's] reply," the objection of counsel for CME and MDC was not that no such amendment existed, but rather that "[i]t didn't go into evidence."

[18]Counsel, in response, preserved his clients' rights on appeal.

is necessary. HDA did nothing at trial to rebut the evidence — which included testimony from the cross-examination of its president — that it had not made certain disclosures. As such, counsel for CME and MDC was induced to believe that the matter had been removed from controversy. We agree that HDA's closing argument, in its untimely attempt to refute allegations of nondisclosure, strayed far from the evidence. We further agree that the nonevidentiary assertions of counsel for HDA were sufficiently prejudicial, in the absence of a strong curative instruction,[19] to warrant a new trial on the c. 93A claim. *Leone* v. *Doran,* 363 Mass. 1, 18 (1973). A potentially dispositive fact,[20] which counsel had been induced to regard as conclusively established, was transformed into a hotly contested, triable question during instruction of the jury and without any opportunity for counsel to make a statement or offer additional evidence on the point. Even if HDA's reply had been amended, it would have remained incumbent upon counsel for HDA to rebut evidence of an admission before closing arguments, in order that opposing counsel could present additional evidence or at the very least explain himself. The unorthodox introduction of evidence in this case may have unfairly vitiated the credibility of counsel for CME and MDC before the judge and jury. Indeed, supposing HDA's reply had not been amended, counsel for CME and MDC was made to appear as if he were misrepresenting the record when, in fact, the situation was exactly the opposite.

The status of the pleadings is an essential question and must be resolved on remand. If HDA did not properly amend its reply dated May 24, 1999, and is not granted leave to do so, then MDC will be entitled to an instruction that HDA's failure to provide "additional offering circulars or disclosure information" has been conclusively established. G. L. c. 231, § 87.

*Attorney's fees.* The North Plymouth agreement provides that "[HDA] shall be entitled to recover from [MDC] all costs and

---

[19]The jury's verdict was advisory as to the G. L. c. 93A counterclaim. See *Linkage Corp.* v. *Trustees of Boston Univ.,* 425 Mass. 1, 22 n.31, cert. denied, 522 U.S. 1015 (1997). Nevertheless, the judge's refusal to provide a curative instruction is a strong indication that he regarded the revelations at closing argument to be competent evidence. A new trial is, therefore, required.

[20]The admission was the basis of a motion for a directed verdict on HDA's liability under G. L. c. 93A for noncompliance with 16 C.F.R. §§ 436 et seq.

expenses, including reasonable attorneys' fees, incurred by [HDA] in enforcing this Agreement . . . ." We construe this language to mean that HDA is entitled to reimbursement for successful claims only. As such, we do not reach the contention that the judge abused his discretion by awarding $115,000 in costs, expenses, and fees to HDA. As the judgment in the case-in-chief has been vacated, on remand HDA shall be permitted to petition the trial court for an award of the costs, expenses, and fees attributable to the claims, counterclaims, or portions thereof, if any, upon which it ultimately prevails.

*Conclusion.* The matter is remanded to the trial court for further proceedings consistent with this opinion.[21]

*So ordered.*

---

[21]HDA has requested its attorney's fees, costs, and expenses in connection with this appeal, pursuant to the terms of the contract. Because the case is being remanded for further proceedings, including a retrial of the G. L. c. 93A counterclaim, the outcome of which may affect HDA's recovery, we cannot say with certainty that HDA has prevailed in its action against the defendants. See, e.g., *T & D Video, Inc.* v. *Revere,* 450 Mass. 107, 115-116 (2007). In the interests of judicial economy, however, the panel will consider HDA's request for fees. Within fourteen days of the date of this decision, HDA may file a petition with this court for reasonable attorney's fees in accordance with the procedure described in *Fabre* v. *Walton,* 441 Mass. 9, 10 (2004), together with supporting materials. These materials shall distinguish, to the extent reasonably possible, the time spent by counsel to defend on appeal the portions of the judgment attributable to the MDC-owned franchises' noncompliance with the advertising provision. See, e.g., *Killeen* v. *Westban Hotel Venture, LP,* 69 Mass. App. Ct. 784, 792-794 (2007). The defendants shall have fourteen days thereafter to file a response. Any resulting award of fees, costs, and expenses shall be unenforceable unless and until a final judgment on the defendants' c. 93A counterclaim enters in favor of HDA.