## PANHANDLE STEEL PRODUCTS CO. v. FIDELITY UNION CASUALTY CO. (No. 12232.)

Court of Civil Appeals of Texas. Fort Worth. Dec. 14, 1929.

Weeks, Morrow, Francis & Hankerson and R. C. Stanford, all of Wichita Falls, for appellant.

Collins & Houston, of Dallas, for appellee.

DUNKLIN, J. This suit was instituted by the Panhandle Steel Products Company against the Fidelity Union Casualty Company to recover the amount claimed to be due on an insurance policy issued by the defendant in favor of the plaintiff, and plaintiff has appealed from a judgment denying it a recovery; the judgment being rendered upon a verdict peremptorily instructed by the trial judge. In the same suit plaintiff sought a recovery also against the Federal Surety Company for the same relief on another policy, which was issued by the latter company; but a nonsuit was taken by plaintiff as to that company, and in the following discussion of the case the term "defendant" is used to designate the Fidelity Union Casualty Company only.

At the time the defendant issued the policy in controversy, plaintiff was conducting a certain iron works business in the city of Wichita Falls, and was selling structural iron and steel to be used in other buildings, and in connection therewith it employed men and trucks and trailers to haul and deliver steel

to be used in such structures. While the policy was in force, the plaintiff sold to Taylor Bros., doing business in Wichita Falls, some channel iron and other material, and agreed to deliver it at the purchaser's plant. In order to make the delivery, the iron was loaded onto one of plaintiff's trucks, which was then driven to the place of delivery by Lewis, one of plaintiff's employees, who was placed in charge of the truck for that purpose. The channel iron to be so delivered was a piece 18 feet long and 8 or 10 inches wide, with a flange of about 2 inches. There was no way to reach the rear of the building in which the load was to be delivered, and therefore the delivery had to be at the front of the building, and in order to make the delivery the truck was backed up to the curb of the street in front of the building, and the iron was then unloaded from the truck and carried into the building; and while being thus unloaded, and while the beam of iron was being moved across the sidewalk into the building, and when about one-half of the beam was off the truck, Miss Ida Godley, a citizen of Wichita Falls, happened to pass along the sidewalk, and while so doing one point of the channel iron beam struck her in the side and injured her.

Miss Godley then instituted suit against the plaintiff in this case for the injuries so sustained by her, which suit was compromised and settled for a consideration of $1,500, which was paid by the plaintiff in this case, and the settlement was fair and reasonable. The amount so paid, together with certain incidental expenses incurred by the plaintiff in this case, such as fees incurred to secure the services of a physician, an attorney, and the witness Lewis, driver of the truck, who was attending school in another county, and whose expenses had to be paid to secure his personal attendance in court, was the amount which plaintiff sought to recover.

When the truck was backed up to the curb in front of the building, occupied by Taylor Bros., who had purchased the material with which the truck was loaded, Lewis, the driver of the truck, went into the building, and inquired of Taylor Bros. where they wanted the materials delivered, and was instructed by them to place it inside the building. Lewis, then with the assistance of one or two of Taylor Bros.' employees proceeded to take the material out of the truck, and carry it across the sidewalk into the building. Several pieces were first unloaded and taken into the building before the channel iron was moved. The plaintiff owned and employed trucks for the purpose of delivering such material to purchasers thereof.

The insurance policy, held by the plaintiff, among others, contained these provisions:

"In consideration of the premium herein provided, it is agreed by the company and the named assured that this policy shall cover all automobiles, trucks, tractors and trailers, owned or operated by the assured at any time during the term of this policy, and that such automobiles, trucks, tractors, and trailers will be used for the purposes stated in this policy, and that the assured accepts and is bound by the condition herein expressed respecting records, reports, premium adjustments, and future premium payments hereinafter contained.

"The earned premium for this insurance shall be $19.00 for each automobile, truck, tractor, or trailer, owned or operated by the assured, being $12.00 for the public liability, coverage and $7.00 for the property damage coverage. It is understood and agreed that the quarterly premium for each automobile, truck, tractor, and trailer covered under this policy shall be one-fourth of the annual premium expressed above, and shall apply to each of the automobiles, trucks, tractors, and trailers as shown by the quarterly reports herein provided.

"7. The automobiles covered by this policy and the premium charges therefor are as follows, it being understood and agreed that the company will not be liable under any of the first three of the insuring agreement except that agreement or those agreements for which a specific premium is provided in the following table.

"8. The automobiles are and will be used for the following purposes only: Business and pleasure."

Following is the insuring agreement, embodied in the policy upon which the plaintiff's suit is based:

"To insure the assured against loss from the liability imposed by law upon the assured for damages, on account of bodily injuries, including death at any time resulting therefrom whether instantaneous or not, accidentally suffered, or alleged to have been suffered, by any person or persons (except as provided in condition B hereof) as a result of the ownership, maintenance, or use, for the purposes described in declaration 8 of any automobile described in declaration 7."

Condition B, referred to in the last-quoted provision, is foreign to any issue in the case and therefore will not be quoted. It was agreed on the trial that notice to the defendant and proof of loss were all made by the plaintiff in accordance with the requirements of the policy.

Following proof of the facts recited above and the introduction of the policy issued by the defendant company, the plaintiff then rested its case; and the only evidence offered by the defendant in rebuttal was allegations in plaintiff's original petition; those allegations being offered as admissions against interest. The abandoned pleading, which was plaintiff's original petition filed in the suit, showed that plaintiff sued both the Fidelity

Union Casualty Company, and the Federal Surety Company, for the same relief sought in the amended petition on which the case went to trial; the nonsuit as to the Federal Surety Company having been taken before the filing of that pleading. The portion of that abandoned petition, which was offered in evidence by the defendant, consisted of allegations to the effect that the injuries suffered by Miss Godley were covered by the policy then held by the plaintiff in the Federal Surety Company. Thereupon the plaintiff introduced in evidence the Federal Surety Company's policy and closed its case.

■ The first question for our determination is whether or not the injury suffered by Miss Godley was the result of the "ownership, maintenance, or use" of the truck for the purposes of plaintiff's business, within the meaning of the policy issued by the defendant. We do not believe that it can be said that the injury resulted from the mere ownership of the truck, but we have reached the conclusion that the injury was the result of its use, irrespective of whether or not the word "maintenance" should be construed as having substantially the same meaning as the word "use," or referring only to the condition of repair in which the trucks were kept.

The language so used in the policy is plain and unambiguous, and the only question for determination is involved in its logical application to the contractual clause of the policy, when read in the light of the surrounding circumstances leading to its procurement and issuance. The defendant issued the policy of insurance with full knowledge of the character of plaintiff's business, and of the use that would be made of its trucks in hauling iron and steel for delivery to plaintiff's customers.

The delivery to the purchaser of the material purchased was the main purpose of the haul, and the loading and unloading were as necessary to accomplish that purpose as was the driving of the truck from plaintiff's place of business to the point of delivery. Not only was the unloading of the material at Taylor Bros.' place of business necessary to consummate the sale made to them, but it was also necessary for further use of the truck by the plaintiff. Hence the unloading of the truck was a necessary incident to its use, as much so as was the driving of it back to the plaintiff's place of business for another haul after being unloaded, or the driving of it to plaintiff's place of business for the purpose of being loaded. It will be noted, further, that the language used in the liability clause of the policy is broad and general in its scope, and not restricted by any words to the effect that the injuries covered by that clause must be the "proximate" result of the use of the truck, or that the injury must be sustained while the truck was being driven, or the re-sult of collision or overturning, etc. Nor did the policy undertake to exempt the company from liability for injuries resulting from the negligent use of the automobile.

We believe it immaterial that the Taylor Bros.' employees were assisting plaintiff's driver, Lewis, in unloading the truck at the time the injury occurred, since their assistance was for plaintiff's benefit, and it is manifest that Lewis was unable to handle the beam without assistance. Furthermore, damages for the negligent manner in which the beam was unloaded, for which plaintiff was held liable to Miss Godley, was one of the risks covered by the policy, if the injury was the result of the use of the truck within the meaning of the policy.

Several decisions, in which recoveries were awarded on accident policies, are cited by the appellant, such as Quality Dairy Co. v. Ft. Dearborn Casualty Underwriters (Mo. App.) 16 S.W.(2d) 613, 614; Ocean Accident & Guarantee Corp. v. Northern Texas Traction Co. (Tex. Civ. App.) 224 S. W. 212, 216; Hey v. Guarantors' Liability Indemnity Co., 181 Pa. 220, 37 A. 402, 59 Am. St. Rep. 644; Wood v. Southern Casualty Co. (Tex. Civ. App.) 270 S. W. 1055, 1056; Hearne v. New England Mutual Marine Ins. Co., 20 Wall. 488, 22 L. Ed. 395; Wheeler v. London Guarantee & Accident Co., Ltd., 292 Pa. 156, 140 A. 855; Park Saddle Horse Co. v. Royal Indemnity Co., 81 Mont. 99, 261 P. 880; Importers' & Exporters' Ins. Co. v. Jones, 166 Ark. 370, 266 S. W. 286.

In support of its contention that the policy did not cover the losses claimed by appellant, appellee has cited such decisions as South Knoxville Brick Co. v. Empire State Surety Co., 126 Tenn. 402, 150 S. W. 92, Ann. Cas. 1913E, 107, and Hill v. New Amsterdam Casualty Co., 211 App. Div. 747, 208 N. Y. S. 235; and appellee also relies on announcements in many of the decisions cited by appellant to support its contention of nonliability, for the reasons hereinafter noted.

■■ In many of the decisions cited by appellant, in which the insurers were held liable for the losses claimed, it was said in effect that the acts insured against were the proximate cause of such losses, and those announcements are relied on by the appellee to support its contention that, in order to hold it liable, it must be said that the use of the automobile truck was the proximate cause of Miss Godley's injury, and that such cannot be said, since the act of Lewis and his helpers in unloading the truck was itself the immediate and proximate cause of the injury, which was not covered by the policy.

Many of the policies involved in those decisions contained language in the liability clauses materially differing in some respects from the policy in controversy here, and were issued to persons and firms pursuing busi-

nesses of different character from that pursued by the plaintiff in this case; and it would unduly prolong this opinion to attempt a discussion of the controlling principles of those decisions. As noted already, the policy did not require that the injury for which the insurer could be held liable should be the *proximate* result of the use of the truck, but only that it must be the result of such use. The injury might be the remote result of such use, without being the proximate result. It is a familiar rule that the terms of the policy must be construed favorably to the insured, and since the insurer drafted it, if it intended that the words "resulting from the use" should mean "proximately resulting from its use," it should have so written the policy.

In Sherman & Redfield on Negligence (5th Ed.) par. 26, the following definition is given, which is substantially in accord with all of the authorities:

"The proximate cause of an event must be understood to be that which, in a natural and continual sequence, unbroken by any new, independent cause, produces that event, and without which that event would not have occurred. Proximity in point of time or space, however, is no part of the definition. That is of no importance, except as it may afford evidence for or against proximity of causation; that is, the proximate cause which is nearest in order of responsible causation."

The act of unloading the automobile was not an act separate and independent of the use of the truck, but was a step incident to the use and necessary to accomplish the purpose thereof. And, since it followed in a natural and continual sequence from the use, it would seem to follow logically that the act of unloading would not preclude a holding that the use of the truck was the proximate cause of the injury, if, indeed, such a holding be necessary to support a recovery by the plaintiff against the defendant. However, independently of that suggested conclusion, there can be no doubt that, since the act of unloading was one of the natural and necessary steps to the undertaking to deliver the beam, and followed in natural sequence the use of the truck to that end, which use was specifically contemplated and covered by the policy, we believe that the conclusion is unavoidable that the use of the truck was the primary and efficient cause of the injury, even though it should not be held to be the *proximate* cause, within the meaning of that term as employed in actions based on negligence of a defendant.

It was agreed by the parties on the trial that the settlement made by plaintiff with Miss Godley and the payment of the same, together with the expenses incurred as an incident thereto, was fair and reasonable and advantageous to the plaintiff; and, defendant having denied liability therefor, said amount was recoverable under the terms of the policy, unless the defendant was entitled to a reduction therefrom by reason of the provisions of the following clause of the policy in question:

"If the assured carries a policy of another insurer, against a loss covered by this policy, the assured shall not be entitled to recover from the company a larger proportion of the entire loss than the amount hereby insured bears to the total amount of valid' and collectable insurance."

That provision in the policy was invoked by the defendant in connection with its pleading that the losses for which plaintiff sought a recovery were also covered by the policy issued in its favor by the Federal Surety Company, that was made one of the defendants in plaintiff's original petition. The maxim amount of insurance issued by the defendant was $10,000, and the same is true of the policy issued by the Federal Surety Company. Based on those allegations, the contention presented by the defendant was that in no event could it be held liable for more than 50 per cent. of the losses sued for by the plaintiff.

The policy that was issued by the Federal Surety Company was valid and outstanding at the time of the accident, and whether or not that policy also covered the losses for which plaintiff sued is the next question to be determined. The liability clause of that policy contains these provisions:

## "Liability Clause.

"Against loss from the liability imposed by law upon the assured for damages on account of bodily injuries and/or death accidentally suffered or alleged to have been suffered by any person or persons not in the employ of the assured, while at or about the work of the assured described in the schedule, by reason of the prosecution of the said work at the locations described in the schedule, provided such bodily injuries and/or death are suffered or alleged to have been suffered as the result of an accident within the period of this policy.

"Subject to the following agreements:

 * * * * * *

"4. This policy does not cover bodily injuries or death (a) suffered by any person or persons while in or on any elevator or any hoisting device or while entering upon or alighting from any elevator or hoisting device; (b) caused by any horse, draft animal or vehicle owned, hired, maintained or used by the assured, or caused by any person while in charge thereof; (c) caused by any person whose compensation is not included in the estimate set forth in the schedule except executive officers.

 * * * * * *

"The following statements, numbered 1 to 13, inclusive, are hereby made a part of this contract, and are acknowledged and repre-

sented by the assured to be true upon the acceptance of this policy, except such as are declared to be matters of estimate only.

"Schedule.

\* \* \* \* \* \*

"1. Name of assured: Panhandle Steel Products Co.

"2. Address of assured: Wichita Falls, Texas.

\* \* \* \* \* \*

"4. The kind of work is ———; the places where the work is to be done are ———; estimated compensation for period of policy is ———; premium rate per $100 of compensation ———; estimated premium ———.

"The total estimated premium for this policy is $12.00.

"5. The estimated compensation covers the compensation of all persons in the business carried on by the assured at the locations mentioned in this schedule, including the salaries or other compensation of executive officers and clerical office employees, except as follows: No exceptions.

\* \* \* \* \* \* \*

"12. The total advance premium for this policy is twelve & no/100 dollars ($12.00).

\* \* \* \* \* \*

pany policy, then necessarily that excluded also the primary cause, to wit, the use of the truck, since the latter could not become effective in the absence of the former.

■ Nor do we believe that the abandoned pleading, which was introduced in evidence, should be construed as a binding admission, precluding any right of recovery on the policy issued by the defendant, since the allegations in that pleading amounted to nothing more than legal conclusions, drawn from the terms of the policy issued by the Federal Surety Company. It follows from the foregoing conclusion that the policy issued by the Federal Surety Company did not cover the injury to Miss Godley, irrespective of the further question whether or not that company was exempt from liability under the provisions of subdivision C of paragraph 4 of the exception to liability copied above, and reading that the policy did not cover bodily injuries "caused by any person whose compensation is not included in the estimate set forth in the schedule except executive officers." The appellee insists that subdivision 5 of the schedule covered compensation paid by the plaintiff to Lewis, the driver of the truck, while appellant claims that it does not cover it, in view of the fact that under the heading "classification," the compensation to be paid Lewis

| Classification | Amount | Rate | Premium |
|---|---|---|---|
| #3620 Tank building metal (shop only) .......... | 20,000.00 | .036 | 12.00 |
| #3620 Boiler making ......................... | If any | .036 | |
| #3030 Iron Works and steel shop fabricating and assembling structural iron and steel, excluding blast furnace, converter or casting of steel, or rolling mill ................... | 30,000.00 | .156 | |
| #3881 Railroad car manufacture—all kinds ..... | 10,000.00 | .06 | |
| #3632 Machine shops, excluding foundry ........ | 5,000.00 | .036 | |
| #8810 Clerical office employees ................ | 10,000.00 | .024 | |

■ It cannot be doubted that the act of Lewis and his associates in unloading the beam from the truck was the direct and immediate cause of the injury to Miss Godley, and we believe that by reason of that fact the losses from that injury were excluded and excepted from the operation of the main liability clause of the policy issued by the Federal Surety Company. Nor do we believe that that conclusion is in conflict with the conclusion already reached that the injury resulted from the use of the automobile within the meaning of the policy first discussed, since the use of the automobile was the primary and efficient cause, and the unloading followed in natural sequence of causation the use of the truck to deliver the beam. Logically and manifestly, if the immediate cause of the injury referred to, which was the last link in the chain of circumstances leading up to the injury, was excluded from the liability provision of the Federal Surety Com-

was not included, and that therefore the Federal Surety Company was not liable for losses occasioned by Miss Godley's injury under the last-quoted subdivision of paragraph 4.

■ Under the rule of construction invoked by the appellee that exceptions to a liability clause broad enough to cover the injury must be strictly construed, and the further rule of a liberal construction of the policy in favor of the assured, we sustain appellee's contention, and hold that the last-quoted provision of the policy did not, of itself, have effect to exempt the Federal Surety Company from liability for the losses occasioned by Miss Godley's injury; but we do hold that it was exempted from liability by reason of subdivision B of section 4 of the exception to the liability clause quoted, for the reasons already noted, and that therefore the appellee was liable for the full amount of the losses mentioned.

804

Accordingly the judgment of the trial court is reversed, and judgment is here rendered in favor of appellant for the amounts paid out by it in settlement of Miss Godley's claim for damages and for the expenses incurred relative thereto and noted above, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment in the trial court.