HARBOR TUG & BARGE CO. v. ZURICH GENERAL ACCIDENT & LIABILITY CO., LIMITED, OF ZURICH, SWITZERLAND.

No. 19084–S.

District Court, N. D. California, S. D.

Aug. 21, 1938.

164

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for plaintiff.

Hoge, Pelton & Gunther, of San Francisco, Cal., for defendant.

LINDLEY, District Judge.

Plaintiff sues upon an indemnity policy of insurance to recover the amount of a judgment obtained against it by the estate of one Donahue for his death caused by its negligence and the necessary expenditures incurred in contesting the suit in which judgment was recovered.

The facts are stipulated, and there is no question as to the court's jurisdiction of the parties and the subject matter.

The policy issued by defendant to plaintiff insured the latter "against loss from the liability imposed by law * * *. for damages on account of bodily injuries or death accidentally suffered or alleged to have been suffered * * * by any person or persons not employed by the assured * * * by reason of the ownership, maintenance, or use of the vessels covered by said policy, or by reason of collision, or other perils of navigation while said vessels are being used in the waters described in said policy."

While the policy was in force one of plaintiff's vessels, the tugboat Panama, pulling two barges, known as No. 0–14 and No. 0–17, collided in navigable waters with the motor vessel Sonoma. The collision was due to the negligence of the Panama and the barges. As a result, forty-five pieces of pipe, carried as cargo, were precipitated into the water and there became a hidden, dangerous obstruction to navigation. The pipes were abandoned, and nearly two days later, at two o'clock in the morning, the motor vessel Stanley Robert, passing through the waters in which they sank, came into collision therewith and was thereby caused to sink, as a result of which Donahue, a member of the crew on the Stanley Robert, not in the employ of plaintiff, met his death by drowning.

The estate of Donahue brought suit to recover damages and judgment entered in the sum of $7800 and costs. Plaintiff requested defendant to defend the suit, and the latter failed so to do. Hence, the present suit is brought to recover upon the policy.

The chief controversy between the parties is as to whether there is any liability in the facts mentioned under the terms of the policy heretofore quoted. The plaintiff contends that the injury to Donahue arose out of the use of its vessel and that liability under the insurance policy thereby came into existence. The defendant contends that the use of the vessel did not cause the injury to Donahue, but that such injury arose subsequent to the use of the vessel, from the negligence of the plaintiff in permitting a dangerous and menacing condition to persist in the form of the pipes submerged in the water.

The California Insurance Code, Section 530, St.Cal.1935, p. 510 (formerly California Civil Code, Section 2626), provides that an insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but that he is not liable for a loss of which the peril insured against was only a remote cause. The maxim that the direct and not the remote cause is to be considered applies with full force to the law governing insurance, and the Code is apparently merely declaratory of the law that the loss in insurance cases must be proximately caused by a peril insured against; in other words, the contract does not contemplate an indemnity to the insured where the peril insured against is the remote cause of action. See Couch Cyclopedia of Insurance Law, Volume 6, § 1463; Cooley's Briefs on Insurance, Volume 5, page 4779. Obviously where the peril insured against is the only cause operating directly or where the loss is consequential and following from necessity directly and immediately upon a peril insured against, the general rule requiring consideration of direct cause is satisfied, but we can not go further back in the line of causation than to find the active, efficient cause of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. Thus, in Miller v. Mutual B. L. Ins. Co., 31 Iowa 216, 236, 7 Am.Rep. 122, the court said:

"A proximate cause of an effect is that which immediately precedes and produces it, as distinguished from the remote, mediate and predisposing cause. When several causes contribute to death as a

result, it may be extremely difficult to determine which was the remote and which the immediate cause, yet this difficulty does not change the fact that the death is to be attributed to the proximate and not the mediate cause."

The question is, was there an unbroken connection between the wrongful act and the injury, a continuous operation of events? Do the facts constitute a continuous succession of events so linked together as to make an entire whole, or was there some new and independent cause intervening between the wrong and the injury?

After considering these principles, I am of the opinion that it cannot be truly said that the injuries to Donahue were caused by the use of the vessel. Had his death occurred at the time of the collision and as a result thereof, the situation would be entirely different. But here the use of the vessel had terminated; the collision had occurred; the vessel insured had passed from the scene of action, and many hours had intervened. True, the plaintiff had committed a tort by creating and permitting to persist a menacing and dangerous condition in the navigable waters without sufficient warning to those legally using such waters. But the insurance policy contained no indemnity against such acts. Its protection was against injuries arising from the actual use of the vessel.

In Luchte v. State Automobile Mut. Ins. Co., 50 Ohio App. 5, 197 N.E. 421, the court had under consideration a policy insuring against liability for injuries arising by reason of the use, ownership, maintenance, or operation of a motor truck. The insured, being engaged in delivery of coal, unloaded the same in front of a customer's house and left it there, thus creating a dangerous condition on the street. No warning signal was placed upon or near the coal. A rider of a motorcycle ran into the pile and an action was brought to recover damages for his death. The company there, as here, refused to conduct the defense, and action was brought to recover upon the policy. The court held that there was no connection between the indemnity of the policy and the injuries sustained. The court distinguished Panhandle Steel Products Co. v. Fidelity Union Casualty Co., Tex.Civ. App., 23 S.W.2d 799, relied upon by plaintiff, saying (page 423 of 197 N.E.):

"In the Panhandle Steel Products Co. v. Fidelity Union Casualty Co. Case, supra, it is stated: 'Furthermore, damages for the negligent manner in which the beam was unloaded, for which plaintiff was held liable to Miss Godley, was one of the risks covered by the policy, if the injury was the result of the use of the truck within the meaning of the policy.'

"It therefore would appear in that case that the injury resulted from the negligent manner in which the truck was unloaded. If, after the truck had been unloaded, and the steel beams left on a public way, without guard, and Miss Godley had been injured by falling over the steel beams left in the public street, we would have the same situation as is presented in this case. Had the cause of action in the Panhandle Steel Products Co. Case been grounded on the failure to light the steel beam so unloaded and left lying in the street, the court might have reached an entirely different conclusion."

There are other authorities to the same effect, and I find nothing in California decisions to the contrary. The injuries suffered by Donahue were not within the coverage of the policy.

Nor do I find any estoppel against defendant to insist upon the defense presented. Plaintiff urges that defendant based its refusal to defend upon one ground, and that, having done so, and that ground having been wholly insufficient, it is now estopped to disclaim liability upon any other basis.

An examination of the correspondence between the parties, however, is conclusive that there was no such waiver. On August 11, 1927, defendant wrote plaintiff that after a complete investigation it found that the accident was not covered by the policy, and said that, there being no connection between the facts and circumstances leading up to the happening of the accident and the coverage of the policy, it was not interested in the matter. On August 17th defendant wrote another letter, in which it said that the character of the coverage extended by the policy was clearly set forth in the contract, and that plaintiff's further request for an explanation of the letter of August 11th would seem to be best answered by the policy itself and by the letter of August 11th. The defendant added that it was not liable for cargo insurance, and declined to defend

on that ground also. But it is clear that it in no way waived anything it had said in its letter of August 11th. It again referred to the same and to the policy, thereby reiterating its position that the accident was not within the coverage of the policy.

The death of Donahue not having been within the perils insured against, and those perils not having been the proximate cause of the injury to Donahue, and there having been no waiver of such defense, judgment will enter for defendant in bar of plaintiff's action and for costs.