## RED BALL MOTOR FREIGHT, Inc., v. EMPLOYERS MUT. LIABILITY INS. CO. OF WISCONSIN.

### No. 13274.

United States Court of Appeals
Fifth Circuit.

May 22, 1951.

Nelson Scurlock, Fort Worth, Tex., for appellant.

Mark Martin, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Brought upon an automobile policy insuring a Chevrolet tractor No. 2258, the suit was for the recovery of sums defendant had, under "Coverage-b Property Damage Liability", contracted and agreed to pay on behalf of plaintiff, as insured.

The claim was that the damages sued for were, within the meaning of Coverage-b, "caused by accident and arising out of the ownership, maintenance, or use of the automobile".

The defendant denied liability and, by cross action, sought recovery of premiums due and unpaid.

Tried to the court without a jury and upon evidence presenting no conflict, there were findings of fact numbered I to XII. The first eleven[1] of these were findings of

1. These were:

I. Defendant issued to plaintiff as insured an automobile policy, by the terms of which (Coverage-b Property Damage Liability) it contracted and agreed "to pay on behalf of the insured all sums which the insured shall be obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance, or use of the automobile.

II. "Use" was defined as including the loading and unloading of the automobile. By the terms of said policy, the defendant also agreed to defend in plaintiff's name, and on its behalf, any suit against plaintiff alleging destruction or damage to property and seeking damages on account thereof even if such suit is groundless. At the same time, the defendant reserved the right to make such investigation, negotiation and settlement of any claim or suit as was deemed expedient by it.

III. The limit of defendant's liability under "Coverage-b Property Damage Liability" quoted above was $100,000.00. Said policy of insurance was in full force and effect at the time of the occurrence involved in this case.

IV. One of the pieces of equipment owned by plaintiff and covered by said policy was a Chevrolet tractor No. 2258.

V. Plaintiff properly notified defendant of the occurrence involved in this case, and thereafter notified defendant when several persons made claims against plaintiff for damages alleged to have been sustained by them as a result of the occurrence involved herein.

VI. Defendant notified plaintiff that in its opinion there was no obligation on its part to protect and insure plaintiff in regard to the accident and explosion involved herein, and stated that plaintiff should make their arrangement to handle the claims.

VII. Plaintiff employed Rawlings, Sayers & Scurlock, Attorneys, of Fort Worth, Texas, to conduct investigation, negotiations and settlement of the various claims, and to defendant any suits that might be filed on such claims, and agreed to pay said attorneys a reasonable fee for their services and a reasonable fee for such services rendered by said attorneys was $4500.00.

VIII. The total amount paid out by the plaintiff in settlement of the various claims and as expenses therein involved was $17,441.72. The settlements were all made in good faith; and the expenses included in said amount were reasonable and necessary.

IX. Since the filing of the suit the corporate charter of plaintiff has been amended, changing its name from Sproles-Red Ball Lines, Inc. to Red Ball Motor Freight, Inc.

X. On January 20, 1947, one of the plaintiff's drivers, in the course of his duty came to the employer's premises to drive a truck out with a shipment of miscellaneous freight cargo. The aforesaid tractor and a trailer made up the equipment for said trip. The employer maintained on the premises a gasoline pump, connected with two tanks, one underground and the other overground, to hold gasoline kept on hand to supply motor fuel for use in its fleet of trucks. This particular truck needed some for the trip. The said driver of the truck drove same up by the gasoline pump to get such supply of motor fuel for the truck. He found that the underground tank was empty, and he opened a valve between the two tanks in order to flow gasoline from the upper to the lower tank and thence through the pump into the truck. He also put the delivery hose and nozzle

the facts testified to, as distinguished from inferences or conclusions drawn from these. The Twelfth[2] was made up in part of facts and in part of inferences from them. Based on these inferences and upon one conclusion of law,[3] there was a judgment for defendant of no liability on the policy and for the premium sued for on its cross bill.

Appealing from this judgment, plaintiff is here attacking as erroneous the conclusions of fact finding XII, and the conclusion of law, and insisting that the judgment may not stand.

In support of its position, it invokes the rules of construction applied to insurance policies: (1) that the language having been selected by the insurer must be construed liberally in favor of the insured and strictly against the insurer;[4] and (2) that if the language of the policy admits of two constructions, that most favorable to the insured must be adopted.[5]

In fuller and more precise support, appellant, citing and discussing cases,[6] with particular emphasis on two from Texas,[7] insists that the great, the controlling, weight of authority supports its contention that the accident and damages were within the coverage of the policy, and the defendant is liable.

Appellee, on its part, insists that the policy is unambiguous and that, under the facts as found and the authorities upon

---

connected with the pump into the intake pipe of the truck's fuel tank, and there was an uneventful filling or partial filling of said fuel tank, then the filling was stopped, followed by withdrawal of the said delivery hose and nozzle. The truck driver next turned the aforesaid valve between the two tanks as far as it would go to close it, and thinking he had done so, but without actually having cut off the flow of gasoline through the valve, he then drove away in the truck about his duties and work. The said valve was faulty in that sometimes it did not shut off tight when first turned to a stop, and had to be worked back and forth until it would completely close. The failure to cut off the flow of gasoline at the valve this time resulted from the faulty condition of the valve and the neglect of the driver to notice that he would have to keep working the valve some more to close it completely. The employer's said premises were located in Fort Worth, Texas.

XI. The gasoline from the storage tanks continued flowing until it overflowed, and after coursing down the city gutters for several blocks, was ignited in some way, causing a rather destructive explosion, about an hour after the departure of the truck. The said truck, at the time, was some forty or fifty miles out of Fort Worth.

2. This was:

XII. The truck had no connection with the gasoline which exploded. Such gasoline had never even been in the fuel tank of the truck. It had not served the purpose of the truck at all. The truck had no defect about it connected with the leakage of gasoline. The use of the truck was not in any substantial sense coupled with the leakage of gasoline.

3. I. The casualty in question in this case did not arise "out of the ownership, maintenance or use of the automobile", and judgment should be rendered for the defendant.

4. McCaleb v. Continental Cas. Co., 132 Tex. 65, 116 S.W.2d 679; Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S.W. 1060; 24 Tex.Jur., 702–11; Lewis v. Ocean Accident, 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129; International Travelers' Ass'n v. Francis, 119 Tex. 1, 23 S.W.2d 282.

5. Aetna Ins. Co. v. Houston Oil & Transport Co., 5 Cir., 49 F.2d 121; Love v. Northwestern Natl. Life Ins. Co., 5 Cir., 119 F.2d 251; 22 Texas Digest, Insurance, ☞146(3) p. 157.

6. Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R. 1088; Maryland Cas. Co. v. Tighe, 9 Cir., 115 F.2d 297; State ex rel. Butte Brewing Co. v. District Court, 110 Mont. 250, 100 P.2d 932; Maryland Cas. Co. v. Cassetty, 6 Cir., 119 F.2d 602; Earl W. Baker & Co. v. Lagaly, 10 Cir., 144 F.2d 344; Huntington Cab Co. v. Am. Fid. & Cas. Co., 4 Cir., 155 F.2d 117; St. Paul Mercury Ind. Co. v. Crow, 5 Cir., 164 F.2d 270; Pacific Auto. Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251 and note.

7. American Employers Ins. Co. v. Brock, Tex.Civ.App., 215 S.W.2d 370; Panhandle Steel Products Co. v. Fidelity Union Cas. Co., Tex.Civ.App., 23 S.W.2d 799.

which it relies,[8] it is quite clear that the district judge was right in holding, as he did, that the accident and damages did not arise from the ownership, maintenance or use of the automobile, and that there was no coverage and no liability.

While we are aware that cases may be found which support the narrow view of the loading and unloading clause contended for by the appellee, and given effect by the district judge,[9] we agree with appellant that the weight of authority, and particularly in Texas, is to the contrary. We agree with appellant, therefore, that the statements made in fact finding XII, "The truck had no connection with the gasoline which exploded * * * the use of the truck was not in any actual sense coupled with the leakage of gasoline", if regarded as findings of fact and not of law, are clearly erroneous, that is, without support in the evidence under the authorities we regard as best considered and controlling here.

Because the view we adopt, as not only correct in general but binding upon us as the view adopted in Texas, from which this case comes, is set out convincingly and with great clarity in the Texas cases, particularly the Brock case, cited in note 7, supra, and there supported by a wealth of citations, it is sufficient for us, without more, to refer to that case and to Pacific Auto Ins. Co. v. Commercial Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251 and the annotations to it, as authority for our view and for a discussion of the two differing lines of authorities.

In stating that the Brock case, supra is authority for our view that there was coverage here, we are not unmindful of the fact that that case and all, or nearly all of the cases referred to in it, dealt with the proper construction of the "loading and unloading" clause of the policy, and that the differences in the two lines of cases spring from the respective theories on which the construction is based.

One of these, the narrow or limited theory of "coming to rest," is that, for occurrences not directly involved in the loading and unloading, the policy affords no coverage.[10]

The other, the theory adopted in Texas and generally known as the "complete operation theory", holds that the provision for use coverage extends to foreseeable consequences of what was done in connection with the use of the car, whether before, after, or during loading or unloading, so long as the act or thing done by the insured's employee which causes the accident arises out of the use of the insured's car.

Neither are we unmindful of the fact that the act causing the accident, for which coverage is claimed here, occurred not while cargo was being loaded into, or unloaded from the tractor-trailer, but while the tractor was being fueled, and that it is contended that, therefore, the wider coverage accorded in connection with loading and unloading [11] is not applicable here.

We are of the opinion that the definition of "use" as "including loading and unloading" is of no great significance in broadening its meaning and that fueling the truck for the journey was just as much a "use" of it is making the journey would be. Cf. Panhandle Steel, note 7, supra, where "use" was not so defined. Without, therefore adopting appellant's theory that the fueling of the truck was a loading operation, we hold that, though the invoked authorities do deal with accidents arising out of the handling of cargo, they are in point

8. Connecticut Indemnity Co. v. Lee, D.C., 74 F.Supp. 353; Bobier v. National Cas. Co., 143 Ohio St. 215, 54 N.E.2d 798; State ex rel. Butte Brewing Co., v. District Court, 110 Mont. 250, 100 P.2d 932; and cases cited in Annotation, 154 A.L.R. 1097–1098.

9. Cf. Annotation to Pacific Auto. Ins. Co. v. Commercial Ins. Co., 160 A.L.R. at page 1264.

10. Cases of this kind are Ferry v. Protective Indemn. Co., 155 Pa.Super. 266, 38 A.2d 493; Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629.

11. In Panhandle Steel Products Co. v. Fidelity Union Cas. Co., Tex.Civ.App., 23 S.W.2d 799, 801, though the policy did not contain a definition of "use" as "including loading and unloading", the Texas Court held "loading and unloading" included in "use" and followed the rule of according liberal coverage.

here where what was being done at the time the wrongful cause was set in motion was an act clearly arising out of either the maintenance or the use of the truck in readying it for its journey.

We rest our holding broadly upon the view, fully developed by the Supreme Court of Missouri, in Schmidt v. Utilities Ins. Co., supra, [353 Mo. 213, 182 S.W.2d [12] 185] that the words "arising out of the ownership, maintenance, or use of the [truck]" are not words of narrow and specific limitation, but are broad, general, and comprehensive terms effecting broad coverage and that they are intended to, and do afford protection to the insured against liability imposed upon him for all damages caused by acts, of his employee in charge of the operation or use of the truck, done in connection with or arising out of such use. "Arising out of" are words of much broader significance than "caused by". They are ordinarily understood to mean " 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' ", or in short, "incident to, or having connection with", the use of the car.

That the cause of the escape of the gasoline, which in unbroken sequence proximately caused the explosion was the negligent act of the driver of the truck in failing properly to close the valve after he had finished fueling his truck from the tank, was not disputed. That there was a direct and proximate causal connection, therefore, between the act causing the escape of the gas and the damages appellant had to pay, no one denies. That this act of the driver of the tractor, in not closing the valve, was an act incident to, and having a connection with, the ownership, maintenance, or use of the truck, we think may not be questioned. To deny coverage here, under these facts, because the gasoline causing the injury had never been in the truck, would be to limit the policy, contrary to its broadly stated terms and to the weight of authority, to damages or injuries proximately caused by the truck itself, as opposed to acts of the driver in charge of the tractor, done or permitted to be done in connection

with the duties or services performed by him,—in this case fueling it—incident to and arising out of the ownership, maintenance, and use of the tractor.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

RUSSELL, Circuit Judge (dissenting).

Where a policy of automobile liability insurance provides for liability for damage arising out of the "use" of the designated automobile, and defines "use" as "including the loading and unloading of the automobile," I have no quarrel with the principle of the "complete operation theory" which the decision in American Employers Ins. Co. v. Brock, Tex.Civ.App., 215 S.W.2d 370, so well announces and adopts as the law of Texas. However, even though the question of "loading and unloading" is not involved in this case, as is recognized by the majority, the effect of the present holding is to apply the "complete operation theory" to the "use" of the automobile. I think the analogy is inapt. Where "use" is defined as including "loading and unloading" there is an extension of coverage to transactions and occurrences which properly can be held to contemplate acts and conduct beyond the use of the automobile merely as a vehicle. But the term "use" without the enlarging endorsement is so restricted to the vehicle. It seems to me that the overlooking of this difference induces error in this case. Thus the application of the principle of the Brock case, supra, in the present case, results in the announcement of the theory, in effect, that acts done "in preparation for use" should be treated as within the coverage of the policy. The holding that all acts which are necessary to the use of the covered automobile are so immediately connected as that accidents arising from them in law arise out of use of the automobile involves a concept which, I submit, is not authorized by the policy. Limitation of the application of such a theory within any reasonable bound will prove extremely difficult, if not impossible. Stated another way, "loading and unload-

12. Cf. also Merchants Co. v. Hartford Accident & Indemnity Co., 187 Miss. 301, 188 So. 571.

ing" refer to cargo and articles and thus broaden the coverage of the policy. On the other hand, "use" of the automobile reasonably and fairly contemplates only its operation as a vehicle. In this sense there is no ambiguity in the term "use." In order to cover a situation similar to that now held analogous to loading and unloading I should think the policy must contain words similar in meaning to "preparation for use." Only then would the negligent act now in question [1] be subject to the application of the principle of the "loading and unloading" cases which are referred to in the opinion of the majority.

I would affirm the judgment of the trial Court.

---

[1]. It should be borne in mind that this was in effect one degree removed from even refueling since the operation of the defective valve was essentially only a means of replenishing the supply in the tank from which refueling was accomplished.