United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 27, 2006**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 04-11345

---

EMCASCO INSURANCE COMPANY,

Plaintiff-Appellant,

VERSUS

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before GARWOOD, SMITH, and DEMOSS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

EMCASCO Insurance Company ("EM-CASCO") filed a subrogation suit against American International Specialty Lines Insurance Company ("AISLIC") to recover under AISLIC's commercial general liability policy for monies EMCASCO paid in defense and settlement of an underlying suit against the two insurers' mutual insured. After limited discovery, both parties moved for summary judgment. The district court granted AISLIC's motion, denied EMCASCO's, and dismissed the subrogation suit with prejudice. Finding the need for further proceedings, we vacate and remand.

I.
A.

In February 2001, Jaime Langston was driving down a paved, public country road with her young son when she skidded on a patch of slick mud, clay, and/or sand. The car swerved off

the road, striking a tree. Langston suffered serious injuries, and her son died at the scene.

### B.

In April 2002, the Langstons sued Wilson-Riley, Inc. ("Wilson-Riley"),[1] the operator of a sand pit located immediately adjacent to the accident site, in state court on the premise that Wilson-Riley, as part of its operation at the sand pit, hauled sand from the pit in trucks that it owned and operated. The original complaint alleged that because of heavy rains preceding the accident, Wilson-Riley's trucks tracked mud onto the roadway when exiting a driveway leading away from the sand pit and that the mud on the road was the producing cause of the accident.

Wilson-Riley and SLS had two different insurance policies covering their activities at the sand pit. Specifically, EMCASCO issued a commercial auto liability policy to Wilson-Riley and SLS, and AISLIC issued both companies a commercial general liability policy (the "CGL policy"). EMCASCO's commercial auto liability policy provides, in relevant part:

SECTION II§LIABILITY COVERAGE

A. COVERAGE

We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

---

[1] The Langstons amended their petition in July 2002, adding SLS Management Corporation ("SLS"), the owner of the property where the sand pit was located, as a defendant.

AISLIC's CGL policy, meanwhile, provides coverage as follows:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this Coverage applies. We will have the right and duty to defend any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this Coverage does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result.

AISLIC's policy also contains the following exclusion:

2. Exclusions

This insurance does not apply to:

. . .

g. Aircraft, Auto or Watercraft

Bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.

About seven weeks after the accident but a year before the Langstons sued, EMCASCO hired defense counsel Mike Winchester to defend Wilson-Riley. In doing so, EMCASCO asserted its reservation of rights in defending the suit. In April 2002, AISLIC hired its own defense counsel, Chad Parker, to represent Wilson-Riley's interests in the Langston suit.

AISLIC also issued Wilson-Riley a reservation of rights letter in which AISLIC advised that, in its view, the existence of the auto exclusion provision in the CGL policy precluded coverage in the Langstons' suit. Specifically, AISLIC stated:

> While the plaintiff's pleadings are ambiguous, we expect that it will come out during the course of this litigation that the only involvement of Wilson-Riley, Inc., was the fact that its "autos," as defined by the policy, were going into and out of the sand pit/premises in question for some weeks proceeding [sic] the accident, and liability for this would fall squarely under the above exclusion . . . . It appears that there will be no coverage for the damages claimed by the plaintiff by virtue of the above policy provisions.

After hiring Parker, AISLIC agreed, in January 2003, to settle the Langstons' claims against SLS for $200,000. After the settlement, counsel for EMCASCO and Wilson-Riley's personal counsel notified AISLIC that they believed the claims the Langstons had remaining against Wilson-Riley still invoked AISLIC's coverage.

It is at this point that the parties disagree as to the extent of the work performed by Parker in AISLIC's defense of Wilson-Riley. EMCASCO maintains that, after the SLS settlement, Parker never reappeared in the suit in Wilson-Riley's defense. Meanwhile, AISLIC argues that at the time it secured the settlement between the Langstons and SLS, the discovery and pleading deadlines relating to Wilson-Riley had passed under the terms of the docket control order. AISLIC acknowledges that Parker did little or no work on behalf of Wilson-Riley after that time but insists that there was little substantive work to be done

aside from actually trying the case.

EMCASCO thereafter demanded that AISLIC share equally in the cost of settling the case on Wilson-Riley's behalf. AISLIC refused, citing the Langstons' pleadings, the evidence it assumed would be introduced at trial, and statements made by the Langstons' counsel as eliminating any liability that AISLIC might be exposed to under its CGL policy.

In effect, AISLIC maintained that Wilson-Riley only faced liability stemming from EMCASCO's auto liability policy. The last version of the Fourth Amended Complaint, however, circulated after SLS settled, alleges that the unpaved exit that Wilson-Riley created from the sandpit to the public road "caused a washing of mud onto the road during rainy weather" and that the "exit drive was not paved until after the accident." It also includes a separate claim for negligence *per se* because the defendant "obstructed the road adjacent to its worksite, which is a violation of Section 42.03 of the Texas Penal Code."

AISLIC did offer to contribute $20,000 to a potential settlement in Wilson-Riley's defense. EMCASCO refused the offer because AISLIC conditioned the money on the agreement that the parties would not later attempt to re-allocate Wilson-Riley's settlement costs. EMCASCO advised AISLIC that it would settle the claims against Wilson-Riley without AISLIC's participation. EMCASCO then obtained a release of all claims against Wilson-Riley by settling with the Langstons for $350,000.

EMCASCO sued AISLIC for subrogation, seeking to recover all or part of the $350,000 it had paid the Langstons in settlement. After limited discovery, EMCASCO and AISLIC simultaneously filed cross-motions for summary judgment.

The district court granted AISLIC's motion, finding that the Langstons' damages were covered by EMCASCO's auto liability policy and were explicitly excluded by AISLIC's CGL policy. It held that the washing of the mud from the unpaved roadway could not have been a "separate" and "independent" cause of the accident, which would have indicated that AISLIC's policy also covered the accident. The court determined that the mud/clay tracked onto the public road by Wilson-Riley "necessarily involved the use of motor vehicles, triggering coverage under its auto policy with EMCASCO." EMCASCO appeals.

## II.
### A.

We review a summary judgment *de novo*, applying the same standard as did the district court. *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 890 (5th Cir. 2003). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). To avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322-23.

### B.

EMCASCO maintains the district court erred in interpreting the auto exclusion clause in AISLIC's CGL policy, which precludes coverage for damages arising out of the "ownership, maintenance, use or entrustment" of any auto owned or operated by the insured, to eliminate AISLIC's liability for monies recovered in the Langstons' suit. EMCASCO argues that the recovered damages did not arise out of the use of a vehicle; it claims the clause is susceptible to more than one reasonable interpretation and thus, under Texas law, should be construed to provide coverage for any "not unreasonable" construction. EMCASCO insists that the district court erred by not addressing the coverage issue against the backdrop formed by Texas law regarding the construction of insurance contracts.

AISLIC, meanwhile, argues that, for three reasons, this court should not defer to the "not unreasonable" construction of the relevant coverage provisions. First, it contends the policies at issue contain no ambiguity that would implicate the method of contract construction favoring the insured. Second, it insists that EMCASCO's proposed reading of the policies does not favor the insured, Wilson-Riley, because EMCASCO's interpretation merely shifts the coverage for the underlying settlement from EMCASCO to AISLIC, yielding no benefit to Wilson-Riley. Finally, AISLIC maintains that EMCASCO's interpretation of the policies is unreasonable because it is inconsistent with Texas law and relies on caselaw that is inapposite to the facts.

Under Texas law, whether an insurer has a duty to defend is governed by the "eight corners rule" whereby the allegations in the petition filed against the insured are compared against the insurance policy. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

4

In reviewing the underlying petition, we focus on the factual allegations that show the origin of damages rather than on the legal theories alleged. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). Any ambiguity in the coverage language should be read in favor of the insured. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 825 (Tex. 1997). Importantly, in a subrogation case such as this, Texas law recognizes the right of one insurer to seek payment from a second insurer under the doctrine of equitable subrogation.[2]

To recover damages, the plaintiff must show a causal relationship between the injury and the use of the auto. *Nat'l Union*, 939 S.W.2d at 142. In *National Union*, the court found that the facts alleged in the pleadings did not suggest even a remote causal relationship between the truck's operation and the plaintiff's injury and concluded that the insurer's auto liability coverage was not triggered: "The only facts alleged . . . are that Hart was operating a Merchants truck when he negligently discharged a firearm injuring Gonzalez. Given their most liberal interpretation, these allegations do not suggest that Gonzalez's injury resulted from the use of the truck." *Id.* at 141-42.

The Langstons' third amended petition states that "[a]s to Defendant Wilson-Riley, Inc., it is specifically alleged that the bodily injury, wrongful death, and property damage was caused by an accident resulting from the ownership, maintenance and use [of] the trucks hauling sand from the worksite in question." This language suggests that based on the pleadings alone, it cannot be said that a causal relationship was not alleged between the use of the trucks and the injury. Therefore, unlike the auto insurer in *National Union*, EMCASCO is not entitled, based on the pleadings alone, to a determination that there was no coverage. Rather, the pleadings show that EMCASCO had a duty to defend.

The duties to defend and to indemnify are distinct and separate, however. *See Farmers Tex. Co. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). An insurer may initially have a duty to defend but, eventually, no duty to indemnify. *Id.* Therefore, we must determine whether there is a duty to indemnify.

In deciding whether such a duty to indemnify exists, Texas courts use the "complete operation" theory, *Travelers Ins. Co. v. Employers Cas. Co.*, 380 S.W.2d 610, 612 (Tex. 1964), under which "the provision for use coverage extends to foreseeable consequences of what was done in connection with the use of the car, . . . so long as the act or thing done by the insured's employee which causes the accident arises out of the use of the insured's car," *Red Ball Motor Freight v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 377 (5th Cir. 1951). Further, "'[a]rising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from,' or in short, 'incident to, or having connection with,' the use of the car." *Id.* at 378.

In *Red Ball*, we held that the act of the driver of a tractor in not closing the fueling valve, which proximately caused an explosion, was an act that arose out of the use of the truck

[2] *Gen'l Star Indem. Co. v. Vesta Fire Ins. Co.*, 173 F.3d 946, 949 (5th Cir. 1999) (citation omitted) (defining equitable subrogation as "the legal fiction through which a person or entity, the subrogee, is substituted, or subrogated, to the rights and remedies of another by virtue of having fulfilled an obligation for which the other was responsible").

because it was incident to, and having a connection with, the use of the truck. *Id.* In doing so, we emphasized that "fueling a truck for the journey was just as much a 'use' of it as making the journey would be." *Id.* In sum, the "complete operation" test has two distinct inquiries: (1) whether the insured's act was an act incident to, and having a connection with, the use of the truck[3] and (2) whether that act proximately caused plaintiff's injury.[4]

With respect to the first inquiry, Texas courts have read business auto policies to cover loading and unloading of the covered vehicle even if that is not specifically mentioned in the text of the policy.[5] Further, loading and unloading has been interpreted to cover acts incident to making a commercial delivery; this includes "the entire process involved in the movement of the articles from the place where insured's employees find the articles which are to be moved by truck, to the place where the employees of insured turn them over to the party to whom they are to make delivery." *Am. Employers' Ins. Co. v. Brock*, 215 S.W.2d 370 (Tex. Civ. App. 1948, writ ref'd n.r.e.); *Travelers*, 380 S.W.2d at 612.

Under this expansive view of what constitutes an auto "use," an insurer was liable for injuries sustained by a pedestrian who fell into an open sidewalk elevator shaft when employees in charge of the insured truck left the shaft doors open while obtaining cross bars to guard the shaft, notwithstanding that nothing had been loaded onto or unloaded from the truck at the time of the fall. *Am. Employers'*, 215 S.W.2d at 370. Therefore, for insurance coverage to exist, the vehicle itself need not be in "operation" or "in motion" or an "active participant" in the plaintiff's injuries:

> [The auto insurer] also relies on the rule that there must be a causal relation or connection between the accident or injury and the ownership, maintenance or use of the vehicle. This does not mean that the accident must be caused by negligent operation of the vehicle or some defect therein. When a vehicle is being unloaded it is being used to the same extent as if it were being driven, and the person doing the unloading is entitled to the same protection as the owner or operator.

*Travelers*, 380 S.W.2d at 614.

It appears that Texas courts have never decided whether mud, clay, sand, or other debris tracked by a truck's tires or fallen from its cargo is incident to its use. We conclude, from the broad interpretation Texas courts have given to what is incident to the use of an automobile, that such debris is indeed incident to the use of the vehicle. Debris falling from a car's cargo is incident to the transportation of that cargo: It

---

[3] *Red Ball*, 189 F.2d at 377 (noting that coverage extends "so long as the act or thing done by the insured's employee which causes the accident arises out of the use of the insured's car"); *id.* at 378 ("That this act of the driver of the tractor, in not closing the valve, was an act incident to, and having a connection with, the ownership, maintenance, or use of the truck, we think may not be questioned.").

[4] *Id.* at 377 (emphasis added) (stating that "the provision for use coverage extends to *foreseeable consequences* of what was done in connection with the use of the car"); *id.* at 378 ("That the cause of the escape of the gasoline, which in unbroken sequence proximately caused the explosion was the negligent act of the driver of the truck in failing properly to close the valve after he had finished fueling his truck from the tank, was not disputed").

[5] *Panhandle Steel Prods. Co. v. Fidelity Union Cas. Co.*, 23 S.W.2d 799 (Tex. Civ. App. 1929, no writ).

is inherent in the transportation of cargo that some of it may spill or fall unto the road.[6] Similarly, the tracking of debris by the tires is incident to the operation of a vehicle on unpaved roads: It is inherent in driving on unpaved roads that some sand, mud, or clay may attach to the tires.[7]

Further, because the plaintiff's injuries need not be caused by the negligent operation of the vehicle, but instead by an act incident to its use, it is not necessary that the plaintiff's injuries occur at the time of or immediately after the tracking of debris on the highway.[8] We thus reject EMCASCO's contention that the "causal standard mandated by the phrase 'arising out of,' however broad, appears at least to require the contemporaneous use of the insured's vehicle."[9] The accident need not be contemporaneous with the use of the vehicle so long as it is a foreseeable consequence of an act incidental to the use of the vehicle, such as the tracking of debris.

This takes us to the second test for determining whether a duty to indemnify exists: whether the tracking of mud onto the highway was the proximate cause of the injuries. The reasoning for this inquiry is plain: If the factfinder determines that the insured's act in connection with the use of the vehicle did not proximately cause the injuries, the insured is not liable, and the insurer has no duty to indemnify.[10]

---

[6] Naturally, not every act in connection with a vehicle is "use." For instance, a drive-by shooting from a vehicle is not an act incident to its "use." *See, e.g., Collier v. Employers Nat'l Ins. Co.*, 861 S.W.2d 286, 289-90 (Tex. App.–Houston [14th Dist.] 1993, writ denied) (holding that a drive-by shooting does not involve the use of a motor vehicle "simply because an automobile provided the site for a criminal assault or provided transportation to the location of a criminal act").

This is because "[t]he use required is of the vehicle *qua* vehicle, rather than simply as an article of property." *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153 (Tex. 1999). Unlike the unloading, which is a use of the vehicle *qua* vehicle (because it is necessary to the delivery/transportation of goods), a drive-by shooting is not "incident" to the use of the vehicle because transportation of people or goods does not necessarily involve a shooting.

[7] *See also Jackson v. Daley*, 739 So.2d 1031, 1041 (Miss. 1999) (holding that injuries resulted from the ownership, maintenance, or use of an automobile because plaintiff was injured after colliding with a pile of dirt dumped on the side of a road by one of the insured's dump trucks, notwithstanding subsequent failure to clean up the dirt); *Merchants Co. v. Hartford Accident & Indem. Co.*, 188 So. 571, 571 (Miss. 1939) (holding that injuries arose out of the ownership, maintenance or use of automobile where motorist's car struck poles that another driver had left lying in the roadway after using them to extricate his truck from a roadside ditch hours earlier).

[8] EMCASCO argues that the language of the insurance contracts at issue is ambiguous and thus maintains we should construe any such ambiguity in the contract to favor coverage. Because we see no ambiguity, we decline to apply the "not unreasonable" contract interpretation urged by EMCASCO.

[9] For that reason, *Lindsey*, 997 S.W.2d 153, does not support the arguments advanced by EMCASCO. That is, even if the Appleman-Couch test were to apply, it would not dictate the result EMCASCO urges, namely that the use of the vehicle has to be contemporary with the injury.

[10] An act incident to the use of a vehicle need not always be the proximate cause of the injury. For instance, if a defendant left debris on a road but
(continued...)

In this regard, the operation or driving of the vehicle need not be the proximate cause of the injuries.[11] This observation merely restates the notion we discussed earlier, i.e., that a vehicle need not be in active operation (such as in a collision) for insurance coverage to exist. Rather, as this court has interpreted Texas law in *Red Ball*, 189 F.3d at 378, only the act incident to, or in connection with, the use of the vehicle must be the proximate cause of the injuries.

Although it was foreseeable that debris left on the road could cause an accident, we do not know whether the accident would not have occurred without the tracking of the debris.[12]

The washing of mud and sand off the unpaved road leading to the public, paved road could have independently produced the accident: The amount of mud accumulated from the rain could have been sufficient to cause the accident even if no mud had been tracked by the trucks. Further, the washing of mud off the unpaved roadway would be a separate cause of the accident. That is, the washing of mud off the unpaved roadway is not derivative of the act of tracking mud by trucks; it could have occurred regardless of the presence of the trucks.[13]

AISLIC's policy covers the allegations with respect to the washing of the mud by the rain, which are allegations unrelated to the use of the trucks, and covers the separate claim for negligence *per se* based on the obstruction of "the road adjacent to [Wilson-Riley's] worksite, which is a violation of Section 42.03 of the Texas Penal Code."[14] Although AISLIC's

---

[10](...continued) accompanied it with sufficient warning signs, and a plaintiff, driving drunk and without required corrective lenses, ignored the signs, it cannot be said that the debris on the highway proximately caused the injury if the law regarded such negligent conduct sufficiently unforeseeable and superseding so as to interrupt the chain of causation.

[11] *Cf. Panhandle Steel*, 23 S.W.2d at 802:

The act of unloading the automobile was not an act separate and independent of the use of the truck, but was a step *incident* to the use and necessary to accomplish the purpose thereof. And, since it followed in a natural and continual sequence from the use, it would seem to follow logically that the act of unloading would not preclude a holding that the use of the truck was the proximate cause of the injury, if, indeed, such a holding be necessary to support a recovery by the plaintiff against the defendant.

(Emphasis added.)

[12] *Cf. id.* ("The proximate cause of an event must be understood to be that which, in a natural (continued...)

[12](...continued) and continual sequence, unbroken by any new, independent cause, produces that event, and *without which that event would not have occurred*.") (emphasis added).

[13] AISLIC argues that EMCASCO has waived the argument that AISLIC's policy applied despite the exclusion because of separate and independent causation. EMCASCO raised that issue in the district court, however, and argues on appeal that AISLIC's policy covers the claim. Thus, the argument was preserved, albeit weakly.

[14] In paragraph 36 of its first original amended answer, AISLIC admitted that if the facts alleged in the last version of the complaint were proved, AISLIC's policy could have provided coverage: "Recognizing that this [Third Version of the Fourth Amended Complaint] might theoretically invoke its coverage (which would actually occur only if plaintiff offered proof of facts which she had (continued...)

CGL policy excluding coverage and EMCASCO's auto policy providing coverage are nearly identical,[15] the polices are mutually exclusive only with respect to which policy covers the tracking of mud by the tires, which is the only issue with respect to the use of an auto.

The non-excluded event, the washing of mud from the unpaved roadway, however, is covered by the general liability policy, because it could have independently caused the injuries. When two separate eventsSSone that is excluded and one that is covered by the general liability policySSmay independently have caused the accident, Texas law mandates that the general liability policy also provide coverage despite the exclusion.[16]

We question the district court's assertion that the washing of the mud off the unpaved roadway could not have been a "separate" and "independent" cause of the accident, but rather a "classic example of concurrent causation" because mud and clay are "by their very nature fungible," rendering it "impossible to distin-guish" the part of the debris that was tracked by the trucks or that was washed off the road. In fact, precisely because it is "impossible to distinguish," once the mud merges, the part of the mud tracked by the tires from that washed by the rain, the proper inquiry is whether the amount of mud washed by the rain could have been sufficiently large to cause an accident by itself.[17]

There is at least a genuine issue of material fact as to this question. The district court acknowledged that some mud and clay "could have been washed by the rain." This mud from the rain could have independently caused the accident. Therefore, summary judgment for AISLIC was improper. On remand, the court should determine whether there is sufficient evidence to declare as a matter of law that the heavy rain in the several hours before the accident could have produced sufficient mud that would have independently caused the accident, or whether that issue should be sent to a factfinder.

## C.

We are mindful that the district court has not addressed AISLIC's contention that it does not have a duty to reimburse EMCASCO because it did not agree to the settlement. The court must confront this issue on remand if it finds that the washing of mud from the unpaved roadway could have independently caused the

---

[14](...continued) previously denied), AISLIC agreed to participate in negotiations to obtain a release for [Wilson-Riley]." Paragraph 35 explained that the Langstons included, in this last version of the complaint, allegations of washing of mud onto the roadway during rainy weather, despite having removed such allegations from prior versions of the amended complaint after SLS had settled.

[15] In such instances, coverage is usually not read to implicate both policies; they are mutually exclusive. *See Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761 (5th Cir. 1999).

[16] *See Utica Nations Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 204 (Tex. 2004), and cases cited therein.

[17] This inquiry is basically the same as that for determining joint and several liability in cases where two fungible causes merge. For instance, where two independent fires combine to destroy a piece of property, if either fire could have destroyed the property by itself, there is joint and several liability. *See, e.g., Anderson v. Minneapolis, St. Paul & Sault Ste. Marie Ry.*, 179 N.W. 45 (Minn. 1920), *overruled in part on other grounds by Borsheim v. Great N. R.R.*, 183 N.W. 519 (Minn. 1921).

accident. *See Liberty Mutual Ins. Co. v. Mid-Continent Ins. Co.*, 405 F.3d 296 (5th Cir.), *modified*, 407 F.3d 683 (5th Cir. 2005).

The judgment is VACATED, and this matter is REMANDED for further proceedings.